**Ex parte Leland R. MILBURN.**

**No. 07–99–0364–CR.**

Court of Appeals of Texas,
Amarillo.

Dec. 14, 1999.

William McKinney, Jr., Amarillo, for appellant.

John Mann, Hemphill County Dist. Atty., Shamrock, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

PER CURIAM.

Appellant Leland R. Milburn is under indictment for the capital offense of intentionally or knowingly causing the death of Brendan Tyler Brown (the "child"), an individual under six years of age, by blunt force trauma to the abdomen on or about May 24, 1999. *See* TEX. PEN.CODE ANN. § 19.03(a)(8) (Vernon 1994). Appellant appeals the trial court's ruling setting bail at $2,000,000 surety bond or $500,000 cash bond and seeks a reduction in bail.

### FACTUAL AND PROCEDURAL BACKGROUND

Following his indictment and arrest for causing the death of the child, appellant was denied bail. Appellant filed an Application for Writ of Habeas Corpus Seeking Bail, and a hearing was conducted on his motion (the "habeas hearing"). Following the habeas hearing, the trial court set bail at $2,000,000 surety bond or $500,000 cash bond. It is from this ruling that appellant appeals.

Evidence at the habeas hearing showed that appellant began a relationship with Caryn Brown (Brown), the child's mother, during October or November, 1998. He is not the natural father of the child. Brown's cousin testified that on May 24, 1999, she babysat the child from approximately 6:00 p.m. until 8:30 p.m. while Brown was at work. Brown's cousin changed the child's diaper at approximately 6:00 p.m. and did not notice anything unusual. She subsequently delivered the child to appellant's mother at approximately 8:30 p.m. and stated that the child appeared normal while he was in her care. Appellant later picked up the child from his mother's house and went to his home with the child.

Brown went to appellant's house at approximately 10:30 p.m. to spend the night. She did not see anyone else in the house that night other than appellant. Brown testified that after she arrived, the child became restless in the bedroom where he was sleeping and appellant moved him to another room where it was cooler. She did not see the child because she did not want to keep him awake with her presence. Brown and appellant later went to bed at approximately 2:00 a.m. on May 25. Appellant left for work early that morning. Brown remained at the house and returned to sleep. At approximately 9:00 a.m., Brown prepared to leave the house. When she went to get the child, he was not breathing and felt "hard." Brown called her mother and the police after discovering the child's condition. The child was later pronounced dead at the Hemphill County Hospital.

The child's death was caused by blunt force trauma to the abdomen. The exact time of death was not determined. When questioned by a Hemphill County deputy sheriff on May 25th, appellant claimed that he did not know what happened to the child. At the habeas hearing, Brown testified that she did not hurt the child.

After the habeas hearing the trial court entered findings of fact. Included in those findings is a finding that the proof is not yet evident that appellant is guilty of capital murder.

By a single issue, appellant contends that the trial court did not set reasonable bail pursuant to Article 1, Section 11 of the Texas Constitution,[1] Article 1.07[2] of the Texas Code of Criminal Procedure, and Article 1.09[3] of the Texas Code of Criminal Procedure.[4]

## LAW

■ Bail is set for the primary purpose of securing the presence of the defendant at trial for the indicted offense. TEX. CODE CRIM. PROC. ANN. art. 17.15(1) (Vernon Supp.2000); *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex.Crim.App.1980). Although bail should be set at a sufficiently high amount to secure compliance by the defendant with terms of the bail, it should not be used as an instrument of oppression, such as forcing the defendant to remain in jail pending trial. TEX.CODE CRIM. PROC. ANN.. art. 17.15(2) (Vernon Supp. 2000); *See Ex parte Ivey*, 594 S.W.2d 98,

99 (Tex.Crim.App.1980). Further, while the accused's ability to make a certain level of bail is considered, this factor is not determinative of the proper amount to be set. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App.1980). In reviewing the amount of bail set by the trial court, we apply an abuse of discretion standard. *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex.Crim.App.1981). Appellant bears the burden of proof to establish that the bail set by the trial court is excessive. *Id.* at 849. Appellant must prove that the amount is excessive in accordance with certain factors:

(1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

(2) The power to require bail is not to be so used as to make it an instrument of oppression.

(3) The nature of the offense and the circumstances under which it was committed are to be considered.

(4) The ability to make bail is to be regarded, and proof may be taken upon this point.

1. All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law. TEX CONST. art. I, § 11.

2. All prisoners shall be bailable unless for capital offenses when the proof is evident. This provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law. TEX.CODE CRIM. PROC. ANN. art. 1.07 (Vernon 1977).

3. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. TEX.CODE CRIM. PROC. ANN. art. 1.09 (Vernon 1977).

4. Although not asserted in his sole issue on appeal, appellant claims in his brief that his right to reasonable bail is also governed by the Eighth Amendment of the United States Constitution. The requirements of 18 U.S.C.A. § 3142 (Bail Reform Act) guide con-

sideration of whether bail is set at an excessive amount under federal law. The Bail Reform Act requires that in order to ensure the defendant's presence at trial and the safety of the community, the court must consider: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the accused; (3) the history and characteristics of the accused, including physical and mental condition, family/community ties, employment, financial resources, prior criminal history, history relating to alcohol/drug abuse, and whether the accused was on probation or parole at the time of the offense or arrest; and (4) the danger to any person or the community if the accused is released. 18 U.S.C.A. § 3142(g) (West Supp. 1999). Most of these factors were recognized in *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex.Crim.App.1981), and are similar in substance to the factors considered by Texas courts under the Texas constitution and state law. *See, e.g., Mecom v. United States*, 434 U.S. 1340, 98 S.Ct. 19, 54 L.Ed.2d 49 (1977); *United States v. McConnell*, 842 F.2d 105 (5th Cir.1988); *United States v. Golding*, 742 F.2d 840 (5th Cir.1984).

(5) The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. PROC. ANN. art. 17.15 (Vernon Supp.2000).

Other factors are also considered, including the possible length of sentence for the indicted offense; the nature and any aggravating factors of the offense; the petitioner's employment record, family and community ties, and length of residency in the jurisdiction; the petitioner's conformity with previous bond conditions; and the petitioner's prior criminal record. *Rubac*, 611 S.W.2d at 849–50; *Ex parte Hugg*, 636 S.W.2d 862, 863 (Tex.App.—Amarillo 1982, pet. ref'd).

Texas courts have set varying amounts of bail in cases wherein the defendant was charged with a capital offense. In *Ex parte Brown*, 959 S.W.2d 369 (Tex.App.—Fort Worth 1998, no pet.), the defendant was indicted for capital murder. The trial court set bail at $500,000. The defendant contended on appeal that $500,000 was excessive. The defendant was a 21–year–old transfer student with no assets, and he had moved approximately five times during a two-year period. *Id.* at 371. The defendant had few relatives in Dallas, his father was stationed overseas, and he had no immediate family in Texas. *Id.* The defendant's relatives testified that they were willing to co-sign a bail bond and ensure that the defendant would abide by any conditions imposed by the trial court. *Id.* There was also testimony that several bond companies would require a significant amount of cash and collateral to secure a $500,000 bond. *Id.* In applying the factors of article 17.15, the appellate court held that while the bail amount was high, the defendant did not establish that it was excessive in light of the fact that he posed a flight risk if the bond was reduced. *Id.* at 372–73. The court also considered the brutal nature of the crime,[5] the potential sentence (life imprisonment or the death penalty) if convicted, defendant's unemployment status, his lack of ties to the community, and his written statement implicating himself as a party to the murder. *Id.*

In *Ex parte Wood*, 952 S.W.2d 41 (Tex. App.—San Antonio 1997, no pet.), the defendant was indicted as a co-conspirator for capital murder as well as an unrelated aggravated robbery. Bail was set at $350,000 in the capital murder case and $100,000 in the aggravated robbery case, and the defendant sought reduction. The defendant's father testified that the defendant could live with him, and that he would ensure his son's appearance at court. *Id.* There was evidence that the defendant's family did not have adequate cash or collateral to post the bond. *Id.* at 43. The investigating officer testified that the defendant had no prior felonies or history of violent crime. *Id.* The defendant's father also testified that his son's mental capacity was that of a fourth or fifth grade child due to attention deficit disorder, and that the defendant was therefore easily influenced by others. *Id.* Although the capital murder charge carried a potential death punishment, the appellate court determined that the defendant was not likely to be a flight risk and was not a danger to the community. *Id.* The defendant's bail for the capital murder case was reduced from $350,000 to $50,000. *Id.*

The San Antonio Court of Appeals also reduced bail for a capital murder defendant in *Ex parte McDonald*, 852 S.W.2d 730 (Tex.App.—San Antonio 1993, no pet.). The defendant was indicted for killing his ex-wife during a kidnapping attempt. Bail was set at $1,000,000. The defendant voluntarily surrendered to the police when he learned of the charge. He was a 50–year resident of San Antonio and had successfully completed probation for a prior burglary offense. *Id.* at 735. The defendant

---

**5.** The victim was strangled and suffocated. When the victim remained alive, he was stomped to death.

had few assets and lived with his ailing mother, who relied on him for care. *Id.* After reviewing numerous capital offense cases and bail amounts authorized by the Court of Criminal Appeals in those cases, the *McDonald* court found the $1,000,000 bail was "oppressively high" and reduced the amount to $75,000. *Id.* at 733–36.

In *Ludwig v. State,* 812 S.W.2d 323 (Tex.Crim.App.1991), the defendant was charged with capital murder for the deaths of his brother-in-law and nephew, and bail was set at $2,000,000. The defendant was a long-time Texas resident with a veterinary practice and no prior criminal record. *Id.* at 324. The defendant's relatives were also long-time residents and were willing to sign a bond and ensure appellant's appearance in court. *Id.* The defendant was involved in a child custody dispute which required his presence in the jurisdiction. He had limited available assets due to the majority of his assets having been frozen by an order in the divorce proceedings. *Id.* At the habeas proceeding there was evidence that the defendant had threatened his mother-in-law, who feared for her safety if defendant was released on bail. *Id.* The Waco Court of Appeals reduced the bail to $1,000,000. The Court of Criminal Appeals commented that it had yet to condone a bail amount approaching seven figures, even in a capital case. The Court determined that $1,000,000 was not a reasonable amount, and reduced bail to $50,-000. *Id.* at 325.

## ANALYSIS AND CONCLUSION

■ The uncontested testimony at the habeas hearing was that appellant had resided in Hemphill County for 21 years and had no prior felony offenses. Appellant made arrangements to surrender himself to the authorities after he was charged with the crime. Appellant is divorced and pays child support. Prior to his arrest appellant was employed. Appellant's father testified that appellant would be able to continue his employment with the same company if appellant were released on bail.

Appellant's father further testified that he would assure his son's appearance at trial. Appellant has little ability to post any amount of bail. His father testified that appellant owns a pickup truck and personal belongings. Appellant does not own any real estate. His father testified that he (the father) could personally make a $50,-000 bail for appellant.

In reviewing the transcript of the habeas hearing, we find no statement by the trial judge such as that noted in *Ex parte Harris,* 733 S.W.2d 712 (Tex.App.—Austin 1987, no pet.), to the effect that the trial judge set the amount of bond as an oppressive measure. In *Harris* the trial judge stated that he was denying a reduction in bail so that the defendant would not be able to bond out of jail and possibly kill someone. *Id.* at 714. However, in setting surety bond at $2,000,000 or cash bond at $500,000, the trial court in the case under consideration effectively ensured that appellant Milburn will remain in jail.

We are mindful that appellant has been indicted for a violent crime. The State filed notice of its intent to seek the death penalty. According to the forensic pathologist, the two-year-old child suffered hard blows to his abdomen, and the injuries were not accidental. The pathologist testified that the abdominal bruises were consistent with appellant's knuckle prints, although he agreed that he was not giving an opinion that the impressions on the child's abdomen were made by appellant's knuckles.

The State presented no evidence concerning safety of the community if appellant is released on bail. The child's mother did not express any safety concerns for herself or her family if appellant were to be released on bail. To the contrary, at one point she was asked by the prosecutor if she was "covering up" for appellant by testifying that she did not believe appellant caused the child's death.

In considering the above factors and evidence, we note that appellant has signif-

icant community/family ties in Hemphill County. His father has resided in the county for approximately 38 years, and appellant is a long-time resident as well. His mother apparently resides in the county. Appellant's father undertook to post bail for and to ensure his son's appearance at trial. There was no evidence that appellant had family or other connections outside of Texas that would give him a ready place to which he could flee. Nor is there evidence that appellant has fled from or avoided obligations previously. Appellant has denied implication in the death of the child. No evidence infers that appellant will endanger the community if released on bail.

Appellant has requested that bail be set no higher than $50,000, as that is the amount that he has the ability to have posted. The amount of bail appellant can post or have posted, however, is not determinative of the amount that should be set, any more than any one of the other factors to be considered is determinative of a reasonable amount to be set. The bail amounts set by appellate courts for the capital offense cases reviewed above range from $50,000 to $500,000. The Court of Criminal Appeals has in the somewhat distant past authorized bail in capital cases to be as little as $20,000. *Ex parte Vasquez,* 558 S.W.2d 477 (Tex.Crim.App.1977); *Ex parte Wilson,* 527 S.W.2d 310 (Tex.Crim.App.1975); *Ex parte Forbes,* 474 S.W.2d 690 (Tex.Crim.App.1972). We do not find such a small amount as $20,000 to be reasonable in this day and time, given the change in the value of money through the years and the evidence at appellant's habeas hearing. However, based on the evidence presented at the habeas hearing, appellant's prayer for reduction in the amount of bail should be granted, and we do so. Bail is fixed at $100,000.