

**NUMBER 13-11-00183-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## EX PARTE PAUL N. MAY

---

**On appeal from the 130th District Court
of Matagorda County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

This is an appeal from the trial court's denial of an application for writ of habeas corpus seeking to reduce bail pending trial. Appellant, Paul N. May, was indicted on twelve counts of making terroristic threats to the public, a third-degree felony; two counts of indecency with a child by contact, a second-degree felony; and two counts of improper relationship between educator and student, also a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West Supp. 2010) (indecency with a child), § 21.12 (West Supp. 2010) (improper relationship between educator and student), §

22.07(a)(5) (West Supp. 2010) (terroristic threat).  May was arrested and bond was set at $20,000 for each count, for a total of $320,000.  In his application for writ of habeas corpus and on appeal, May contends that the bond amount is unreasonable and excessive in violation of the Texas Constitution.  *See* TEX. CONST. art. I, § 13.  We affirm.

## I. BACKGROUND

May, a substitute teacher working at Bay City High School and Bay City Junior High School, was arrested and charged with making terroristic threats on January 27, 2011.  He filed his application for writ of habeas corpus with the trial court on February 18, 2011.  In his application, May requested that he be released or that his bond be reduced.  On March 2, 2011, he was formally indicted by a grand jury on all sixteen of the aforementioned counts.  A hearing on May's application was held on March 10, 2011, at which Bay City Police Department Detective Tommy Lytle testified as to the following.

Superintendent Keith Brown of the Bay City Independent School District ("BCISD") received an anonymous letter on December 28, 2010, in which the author of the letter threatened to hurt children in the school district if certain demands were not met.[1]  Acronyms used in the letter indicated that the author was familiar with internal BCISD vernacular.[2]  A second letter, found in a rural mailbox on January 11, 2011, also threatened children in the school district and appeared to be written by the same person

---

[1] The record does not reveal the nature or content of the writer's demands.

[2] For example, the author of the letter used "I.S.S." to mean in-school suspension, "A.S.D." to mean after school detention, and "A.P." to mean assistant principal.

as the first letter.[3]  The second letter specifically mentioned the name of Superintendent Brown's daughter, a BCISD high school student.  The second letter gave the district a deadline of February 1, 2011 to meet the author's demands.

On January 26, 2011, various businesses and residences in Bay City received anonymous threatening phone calls.  We list them here with the recipient of the call stated first and the content of each call set forth second:  (1) to Orleans Apartments: "Tell the children they must follow the rules or they will die"; (2) to Green Brothers, a jewelry store:  "February 1st, deadline for following rules of BCISD"; (3) to AutoZone:  "If my demands aren't met by February 1st, children will die"; (4) to Meadow Chase Apartments:  "Pass this message.  February 1st, follow my rules"; (5) to Dr. Maxwell, a pediatrician:  "I'm in one of your schools.  Tell the police or someone dies"; (6) to the residence of Edith Medina:  "I'm in front of the school.  Tell the police"; (7) to the Salvation Army:  "BCISD, pay attention or children will die"; (8) to Lisa's Main Street Salon:  "Until February 1st, to follow my rules"; (9) to Cutting Up Hair Salon: "Orders not followed by February 1st, all children will die"; (10) to Salon Depot:  "February 1st, deadline for you to follow my orders"; (11) to Palais Royal, a department store:  "BCISD, last chance, February 1st, follow my rules"; (12) to McAda Drilling:  "In the letters by February 1st children will die"; and (13) to the residence of Ruth Mendick:  "I'm at your school.  Call the police."

Each of the calls, except for one, resulted in "private caller" showing up on the recipient's caller ID.  The call made to Meadow Chase Apartments, however, was transferred to an answering service, and the equipment used by the answering service

---

[3] Among the threats made in the second letter was the statement that the children of the district are "in my hairs," meaning crosshairs.

was able to identify the caller's phone number. A police inquiry to AT&T revealed that the calls emanated from a prepaid TracFone mobile phone which was purchased at a Wal-Mart on January 25, 2011.

Police officers went to the local Wal-Mart in Bay City and found that the serial number of the phone that made the calls matched the serial number of a TracFone sold at the Wal-Mart on January 25. The asset protection coordinator at the Wal-Mart was then able to pull surveillance video of the sale. According to Detective Lytle, the video "starts as the [purchaser's] vehicle pulls into the store, as the person exits the vehicle, walks through the store, purchases the phone, exits the store and reenters the vehicle and drives away." Screenshots of the video were shown to several school administrators, three of which positively identified May as the man who purchased the TracFone. Officers later obtained May's address and confirmed that the vehicle parked outside his residence was the same vehicle as shown on the Wal-Mart surveillance video.

A warrant to search May's residence was obtained and executed just before midnight on January 26. Various firearms were taken from the residence by police. Records for May's home phone revealed that a call was made from the residence on January 25 to a toll-free number which is used to activate TracFone phones. Police connected May to the threatening letters in part because several of the calls stated the same deadline, February 1, as the letters did. Further investigation revealed that May frequently hunted on land located adjacent to where the second letter was found, and that May had previous military experience.

Detective Lytle stated that, since the date of May's arrest, no further threats have

4

been made to BCISD or its students.

Vickie Carr, a friend of May, gave a statement to police in which she relayed statements made by May. According to Detective Lytle, May told Carr that "it would be difficult to stop someone from shooting a student in the open and pointed out areas that a shooter could shoot from." A subsequent police interview of Carr's daughter led to the filing of charges against May for indecency with a child by touching and improper relationship between an educator and student.

The trial court denied May's application and this appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8 (West 2005) (permitting appeal of trial court's denial of habeas corpus application).

## II. DISCUSSION

### A. Standard of Review

In reviewing a trial court's decision on a habeas corpus application, we review the facts in the light most favorable to the trial court's ruling and, absent an abuse of discretion, we uphold the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). We give "almost total deference to a trial court's determination of the historical facts," particularly when the findings are based on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *Id.* The sole purpose of the appeal is to do substantial justice to the parties. TEX. R. APP. P. 31.2.

### B. Applicable Law

5

In general, all persons accused of non-capital crimes have the right to bail pending trial. TEX. CODE CRIM. PROC. ANN. art. 1.07 (West 2005). That right is based on the presumption of innocence. *Nguyen v. State*, 881 S.W.2d 141, 143 (Tex. App.— Houston [1st Dist.] 1994, no pet.). Excessive bail is prohibited by both the United States and Texas Constitutions. *See* U.S. CONST. amend VIII; TEX. CONST. art. I, § 13. The primary purpose of an appearance bond is to secure the defendant's presence in court. *Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. [Panel Op.] 1980). While bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression. *Nguyen*, 881 S.W.2d at 143.

In setting the amount of bail, trial courts are instructed by the code of criminal procedure to consider the following factors:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005). Other factors also considered include: the possible length of sentence for the indicted offense; the nature and any aggravating factors of the offense; the petitioner's employment record, family and community ties, and length of residency in the jurisdiction; the petitioner's conformity

6

with previous bond conditions; and the petitioner's prior criminal record. *Ex parte Milburn*, 8 S.W.3d 422, 425 (Tex. App.—Amarillo 1999, no pet.) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981)).

When a defendant claims that the amount of bail set is excessive, the burden of proof rests upon him. *Ex parte Rubac*, 611 S.W.2d at 849; *Nguyen*, 881 S.W.2d at 143. The amount of bail set is within the sound discretion of the trial court. *Nguyen*, 881 S.W.2d at 143.

## C.    Analysis

At the March 10, 2011 hearing and on appeal, May argued that the bail amount set by the trial court is unreasonable because he is not a flight risk or a threat to the community. In support of his position, May notes that he has no prior criminal record; that his two teenage children are students at Bay City High School; that he has several family members and close friends living in Bay City; and that Superintendent Brown had praised May's job performance. At the hearing, several members of May's family testified that he poses no danger to the community and that they have never observed May to be violent or threatening. May also contends that he and his family are unable to post the necessary cash and collateral for a $320,000 bond; but because he and his family had $10,000 to $12,000 in cash on hand at the time of the hearing, he does have the ability to make a ten percent deposit on a $100,000 to $120,000 bond.

On the other hand, testimony at the hearing established that May and his wife moved to Bay City only four years ago and that the majority of May's family lives in Arkansas. Moreover, May is charged with twelve third-degree felonies and four second-degree felonies. If he is convicted, he could be sentenced to as many as 200 years'

7

imprisonment if the maximum sentences are imposed and the sentences are ordered to run consecutively. *See* TEX. PENAL CODE ANN. § 12.33 (West Supp. 2010) (maximum sentence for second-degree felony is twenty years' imprisonment), § 12.34 (West Supp. 2010) (maximum sentence for third-degree felony is ten years' imprisonment). Further, the trial court was within its discretion to disbelieve the testimony of May's family members that he does not pose a threat to the community and instead to believe the State's witnesses, each of which believed that May would be a danger to the community if released on bail.

Finally, although May's family members testified that he and his family could not afford to post a $320,000 bond, no witness testified that May or his family actually made an attempt to post a bond in that amount. May's sister testified that she owned certain excavation equipment that she used in her business, worth in excess of $100,000, that she would be willing to make available at least in part as collateral. The trial court was within its discretion to determine that the May family's cash on hand, combined with May's sister's offer to produce valuable business equipment as collateral, contradicted May's wife's testimony that the family could not afford to post a $320,000 bond. Even so, the amount of bail an appellant can post or have posted "is not determinative of the amount that should be set, any more than any one of the other factors to be considered is determinative of a reasonable amount to be set." *Ex parte Milburn*, 8 S.W.3d at 427.

Considering all of the factors set forth in the code of criminal procedure and case law, we conclude that the trial court did not abuse its discretion in fixing bail in this case at $20,000 per count, for a total of $320,000. We do not believe that this amount is oppressive; rather, we find that it is sufficient to give reasonable assurance that May will

8

appear at future trial court proceedings.  *See* TEX. CODE CRIM. PROC. ANN. art. 17.15;

*Nguyen*, 881 S.W.2d at 143.  May's issue is overruled.[4]

### III. CONCLUSION

We affirm the judgment of the trial court.


DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
30th day of August, 2011.

---

[4] In its brief, the State contends that May's habeas corpus application is deficient because it did not include a copy of the writ, order, or process confirming May's confinement or say that such a copy could not be obtained.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.14(2) (West 2005) ("When the party is confined or restrained by virtue of any writ, order or process, or under color of either, a copy shall be annexed to the petition, or it shall be stated that a copy cannot be obtained . . . .").  In light of our conclusion that the trial court did not abuse its discretion in denying May's application, we need not address this issue.  *See* TEX. R. APP. P. 47.1.