NUMBER 13-11-00183-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

EX PARTE PAUL N. MAY

                                                                                                                             

 

On appeal from the 130th
District Court

of Matagorda County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza 

Memorandum Opinion by
Justice Garza

 

            This is an appeal from the
trial court’s denial of an application for writ of habeas corpus seeking to
reduce bail pending trial.  Appellant, Paul N. May, was indicted on twelve
counts of making terroristic threats to the public, a third-degree felony; two
counts of indecency with a child by contact, a second-degree felony; and two
counts of improper relationship between educator and student, also a second-degree
felony.  See Tex. Penal Code Ann.
§ 21.11(a)(1) (West Supp. 2010) (indecency with a child), § 21.12 (West Supp.
2010) (improper relationship between educator and student), § 22.07(a)(5) (West
Supp. 2010) (terroristic threat).  May was arrested and bond was set at $20,000
for each count, for a total of $320,000.  In his application for writ of habeas
corpus and on appeal, May contends that the bond amount is unreasonable and excessive
in violation of the Texas Constitution.  See Tex. Const. art. I, § 13.  We affirm.

I. 
Background

            May, a substitute teacher
working at Bay City High School and Bay City Junior High School, was arrested
and charged with making terroristic threats on January 27, 2011.  He filed his
application for writ of habeas corpus with the trial court on February 18,
2011.  In his application, May requested that he be released or that his bond
be reduced.  On March 2, 2011, he was formally indicted by a grand jury on all
sixteen of the aforementioned counts.  A hearing on May’s application was held
on March 10, 2011, at which Bay City Police Department Detective Tommy Lytle
testified as to the following.

Superintendent Keith Brown of the Bay
City Independent School District (“BCISD”) received an anonymous letter on
December 28, 2010, in which the author of the letter threatened to hurt
children in the school district if certain demands were not met.[1] 
Acronyms used in the letter indicated that the author was familiar with
internal BCISD vernacular.[2] 
A second letter, found in a rural mailbox on January 11, 2011, also threatened
children in the school district and appeared to be written by the same person
as the first letter.[3] 
The second letter specifically mentioned the name of Superintendent Brown’s
daughter, a BCISD high school student.  The second letter gave the district a
deadline of February 1, 2011 to meet the author’s demands.

On January 26, 2011, various
businesses and residences in Bay City received anonymous threatening phone
calls.  We list them here with the recipient of the call stated first and the content
of each call set forth second:  (1) to Orleans Apartments:  “Tell the children
they must follow the rules or they will die”; (2) to Green Brothers, a jewelry
store:  “February 1st, deadline for following rules of BCISD”; (3) to
AutoZone:  “If my demands aren’t met by February 1st, children will die”; (4)
to Meadow Chase Apartments:  “Pass this message.  February 1st, follow my
rules”; (5) to Dr. Maxwell, a pediatrician:  “I’m in one of your schools.  Tell
the police or someone dies”; (6) to the residence of Edith Medina:  “I’m in
front of the school.  Tell the police”; (7) to the Salvation Army:  “BCISD, pay
attention or children will die”; (8) to Lisa’s Main Street Salon:  “Until
February 1st, to follow my rules”; (9) to Cutting Up Hair Salon: “Orders not
followed by February 1st, all children will die”; (10) to Salon Depot: 
“February 1st, deadline for you to follow my orders”; (11) to Palais Royal, a
department store:  “BCISD, last chance, February 1st, follow my rules”; (12) to
McAda Drilling:  “In the letters by February 1st children will die”; and (13)
to the residence of Ruth Mendick:  “I’m at your school.  Call the police.”

Each of the calls, except for one,
resulted in “private caller” showing up on the recipient’s caller ID.  The call
made to Meadow Chase Apartments, however, was transferred to an answering
service, and the equipment used by the answering service was able to identify
the caller’s phone number.  A police inquiry to AT&T revealed that the
calls emanated from a prepaid TracFone mobile phone which was purchased at a
Wal-Mart on January 25, 2011.

Police officers went to the local
Wal-Mart in Bay City and found that the serial number of the phone that made
the calls matched the serial number of a TracFone sold at the Wal-Mart on
January 25.  The asset protection coordinator at the Wal-Mart was then able to
pull surveillance video of the sale.  According to Detective Lytle, the video
“starts as the [purchaser’s] vehicle pulls into the store, as the person exits
the vehicle, walks through the store, purchases the phone, exits the store and
reenters the vehicle and drives away.”  Screenshots of the video were shown to
several school administrators, three of which positively identified May as the
man who purchased the TracFone.  Officers later obtained May’s address and
confirmed that the vehicle parked outside his residence was the same vehicle as
shown on the Wal-Mart surveillance video.

A warrant to search May’s residence
was obtained and executed just before midnight on January 26.  Various firearms
were taken from the residence by police.  Records for May’s home phone revealed
that a call was made from the residence on January 25 to a toll-free number
which is used to activate TracFone phones.  Police connected May to the
threatening letters in part because several of the calls stated the same
deadline, February 1, as the letters did.  Further investigation revealed that
May frequently hunted on land located adjacent to where the second letter was
found, and that May had previous military experience.

Detective Lytle
stated that, since the date of May’s arrest, no further threats have been made
to BCISD or its students.

Vickie Carr, a friend
of May, gave a statement to police in which she relayed statements made by
May.  According to Detective Lytle, May told Carr that “it would be difficult
to stop someone from shooting a student in the open and pointed out areas that
a shooter could shoot from.”  A subsequent police interview of Carr’s daughter
led to the filing of charges against May for indecency with a child by touching
and improper relationship between an educator and student.

The trial court
denied May’s application and this appeal followed.  See Tex. Code Crim. Proc. Ann. art. 11.072,
§ 8 (West 2005) (permitting appeal of trial court’s denial of habeas corpus
application).

II. 
Discussion

A.        Standard of
Review

            In
reviewing a trial court’s decision on a habeas corpus application, we review
the facts in the light most favorable to the trial court’s ruling and, absent
an abuse of discretion, we uphold the ruling.  Ex parte Wheeler, 203
S.W.3d 317, 324 (Tex. Crim. App. 2006).  We give “almost total deference
to a trial court’s determination of the historical facts,” particularly when
the findings are based on an evaluation of credibility and demeanor.  Ex
parte Peterson, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), overruled on
other grounds by Ex parte Lewis, 219 S.W.3d 335 (Tex. Crim. App. 2007).  If
the resolution of the ultimate question turns on an application of legal
standards, we review the determination de novo.  Id.  The sole purpose
of the appeal is to do substantial justice to the parties.  Tex. R. App. P. 31.2.

B.        Applicable
Law

            In
general, all persons accused of non-capital crimes have the right to bail
pending trial.  Tex. Code Crim. Proc.
Ann. art. 1.07 (West 2005).  That right is based on the presumption of
innocence.  Nguyen v. State, 881 S.W.2d 141, 143 (Tex. App.—Houston [1st
Dist.] 1994, no pet.).  Excessive bail is prohibited by both the United States
and Texas Constitutions.  See U.S.
Const. amend VIII; Tex. Const.
art. I, § 13.  The primary purpose of an appearance bond is to secure the
defendant’s presence in court.  Ex parte Vance, 608 S.W.2d 681, 683
(Tex. Crim. App. [Panel Op.] 1980).  While bail should be sufficiently high to
give reasonable assurance that the accused will appear, the power to require
bail should not be used as an instrument of oppression.  Nguyen, 881
S.W.2d at 143.

In setting the amount
of bail, trial courts are instructed by the code of criminal procedure to consider
the following factors:

1.           
The bail shall be
sufficiently high to give reasonable assurance that the undertaking will be
complied with.

 

2.           
The power to
require bail is not to be so used as to make it an instrument of oppression.

 

3.           
The nature of the
offense and the circumstances under which it was committed are to be
considered.

 

4.           
The ability to
make bail is to be regarded, and proof may be taken upon this point.

 

5.           
The future safety
of a victim of the alleged offense and the community shall be considered.

 

Tex.
Code Crim. Proc. Ann.
art. 17.15 (West 2005).  Other factors also considered include:  the possible
length of sentence for the indicted offense; the nature and any aggravating
factors of the offense; the petitioner’s employment record, family and community
ties, and length of residency in the jurisdiction; the petitioner’s conformity
with previous bond conditions; and the petitioner’s prior criminal record.
 Ex parte
Milburn,
8 S.W.3d 422, 425 (Tex. App.—Amarillo 1999, no pet.) (citing Ex parte Rubac,
611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981)).

When a defendant
claims that the amount of bail set is excessive, the burden of proof rests upon
him.  Ex parte Rubac, 611 S.W.2d at 849; Nguyen, 881 S.W.2d at
143.  The amount of bail set is within the sound discretion of the trial court.
 Nguyen, 881 S.W.2d at 143.

C.        Analysis

            At the
March 10, 2011 hearing and on appeal, May argued that the bail amount set by
the trial court is unreasonable because he is not a flight risk or a threat to
the community.  In support of his position, May notes that he has no prior
criminal record; that his two teenage children are students at Bay City High
School; that he has several family members and close friends living in Bay
City; and that Superintendent Brown had praised May’s job performance.  At the
hearing, several members of May’s family testified that he poses no danger to
the community and that they have never observed May to be violent or
threatening.  May also contends that he and his family are unable to post the
necessary cash and collateral for a $320,000 bond; but because he and his
family had $10,000 to $12,000 in cash on hand at the time of the hearing, he
does have the ability to make a ten percent deposit on a $100,000 to $120,000
bond.        

            On the
other hand, testimony at the hearing established that May and his wife moved to
Bay City only four years ago and that the majority of May’s family lives in
Arkansas.  Moreover, May is charged with twelve third-degree felonies and four
second-degree felonies.  If he is convicted, he could be sentenced to as many
as 200 years’ imprisonment if the maximum sentences are imposed and the
sentences are ordered to run consecutively.  See Tex. Penal Code Ann. § 12.33 (West Supp. 2010) (maximum
sentence for second-degree felony is twenty years’ imprisonment), § 12.34 (West
Supp. 2010) (maximum sentence for third-degree felony is ten years’
imprisonment).  Further, the trial court was within its discretion to
disbelieve the testimony of May’s family members that he does not pose a threat
to the community and instead to believe the State’s witnesses, each of which
believed that May would be a danger to the community if released on bail.

            Finally,
although May’s family members testified that he and his family could not afford
to post a $320,000 bond, no witness testified that May or his family actually
made an attempt to post a bond in that amount.  May’s sister testified that she
owned certain excavation equipment that she used in her business, worth in
excess of $100,000, that she would be willing to make available at least in
part as collateral.  The trial court was within its discretion to determine
that the May family’s cash on hand, combined with May’s sister’s offer to
produce valuable business equipment as collateral, contradicted May’s wife’s
testimony that the family could not afford to post a $320,000 bond.  Even so, the
amount of bail an appellant can post or have posted “is not determinative of
the amount that should be set, any more than any one of the other factors to be
considered is determinative of a reasonable amount to be set.”  Ex parte
Milburn, 8 S.W.3d at 427.

            Considering
all of the factors set forth in the code of criminal procedure and case law, we
conclude that the trial court did not abuse its discretion in fixing bail in
this case at $20,000 per count, for a total of $320,000.  We do not believe
that this amount is oppressive; rather, we find that it is sufficient to give
reasonable assurance that May will appear at future trial court proceedings.  See
Tex. Code Crim. Proc. Ann. art.
17.15; Nguyen, 881 S.W.2d at 143.  May’s issue is overruled.[4]

III. 
Conclusion

            We affirm the
judgment of the trial court.

 

 

 

DORI CONTRERAS GARZA

Justice

 

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

30th
day of August, 2011.









[1]
The record does not reveal the nature or content of the writer’s demands.

 





[2]
For example, the author of the letter used “I.S.S.” to mean in-school
suspension, “A.S.D.” to mean after school detention, and “A.P.” to mean
assistant principal.

 





[3]
Among the threats made in the second letter was the statement that the children
of the district are “in my hairs,” meaning crosshairs.





[4]
In its brief, the State contends that May’s habeas corpus application is
deficient because it did not include a copy of the writ, order, or process
confirming May’s confinement or say that such a copy could not be obtained.  See
Tex. Code Crim. Proc. Ann. art.
11.14(2) (West 2005) (“When the party is confined or restrained by virtue of
any writ, order or process, or under color of either, a copy shall be annexed
to the petition, or it shall be stated that a copy cannot be obtained . . .
.”).  In light of our conclusion that the trial court did not abuse its
discretion in denying May’s application, we need not address this issue.  See
Tex. R. App. P. 47.1.