

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00284-CR
### NO. 02-11-00285-CR
### NO. 02-11-00286-CR
### NO. 02-11-00287-CR
### NO. 02-11-00288-CR

EX PARTE STEVEN BENZER

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Steven Benzer appeals the trial court's order denying his pretrial applications for writ of habeas corpus seeking a reduction of bail pending trial. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Benzer is a self-employed "broadcast technician" who lives in Carrollton with his wife and two children. Before being incarcerated, Benzer frequented the streets of his neighborhood in order to observe and report what he perceived to be criminal activity, including ordinance code violations. Over the years, Benzer has reported "many complaints" of alleged ordinance violations that occurred within his neighborhood.[2] According to his wife, at some point, Benzer was advised by "several departments within" the City of Carrollton to document the alleged violations using either an audio or videotaping device. Benzer did so and began videotaping anything that he perceived to be a criminal violation.

Much of Benzer's attention appeared to be focused on the Swadley residence. Diana Swadley and her two children, Rachel and Jonathan, live in a house that shares an alley with the Benzer residence.[3] Diana agreed that "it would be putting it mildly to say that there has been an ongoing problem with [Benzer] and the Swadley family."[4]

---

[2]One investigator conservatively estimated that Benzer called 9-1-1 "easily 225" times over the course of a few months during 2009. Benzer's complaints were so numerous that he apparently acquired quite a reputation; Benzer's wife, Denise, claimed that one Carrollton police officer and three Carrollton dispatch officers were fired for egging his house.

[3]An investigator appointed to assist Benzer's trial attorney testified that she had not seen the Swadleys at their residence for over two weeks.

[4]Benzer's wife admitted that Benzer had been videotaping the Swadleys up to thirty minutes every single day.

In October 2009, Benzer was indicted for aggravated assault with a deadly weapon, to-wit: a knife, alleged to have been committed in July 2009 against Cameron Walter, a friend of Jonathan Swadley who also lives in the same neighborhood as Benzer. Benzer posted the $75,000 bond when he was charged and was released.

On November 12, 2009, Benzer was arrested for allegedly stalking Diana Swadley and her family while they were in their yard. Benzer posted the $75,000 bond and was released on November 13, 2009.

Almost immediately thereafter, authorities arrested Benzer a third time on November 18, 2009, for allegedly (1) committing another stalking offense against Diana Swadley (leaving a message on her telephone stating something to the effect of "things weren't over yet between him and her") and (2) violating a protective order that had been entered by a magistrate. Bail was originally set at $1,000,000 for each of these offenses, but the trial court later reduced the bail to $125,000 for each offense. Benzer posted bonds for each offense on or about April 15, 2010, and was released. At some point, the trial court raised the bail in the aggravated assault and the first stalking causes from $75,000 each to $125,000 each. Benzer was also able to post bonds for these offenses on April 15, 2010.

Approximately one month later, in May 2010, Benzer was arrested a fourth time for allegedly retaliating against Cameron Walter, the complainant in the aggravated assault cause, by verbally threatening him and blocking his vehicle.

3

The trial court set bail at $25,000 for this offense, but it revoked the bail in each of the other causes (all had been set at $125,000) because Benzer missed a hearing, but it later reinstated the bail for each cause at $200,000. Benzer was unable to post four $200,000 bonds and the $25,000 bond, and he filed motions to reduce the bonds and this habeas corpus action, all of which were denied by the trial court.

### III. BAIL REDUCTION

In his only issue, Benzer argues that the trial court abused its discretion by not reducing what he contends are excessive and unconstitutionally oppressive bail amounts that were set in each of the causes pending in the trial court. He contends that the bail is not only calculated to ensure his continued detention, but that he will be prevented from receiving effective assistance of counsel at trial due to the "inherent complexities of untangling numerous hours of video." Benzer prays that we lower the total amount of bail to an amount that will assure his presence at trial.

We review the trial court's denial of a bond-reduction request for an abuse of discretion. *See Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981); *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981); *see also* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005) (giving trial court discretion to set bail amount). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was

4

arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh'g). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

In general, all persons accused of noncapital crimes have the right to bail pending trial. Tex. Code Crim. Proc. Ann. art. 1.07 (West 2005). But excessive bail is prohibited by both the federal and state constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. The primary purpose of an appearance bond is to secure the defendant's presence in court. *Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. [Panel Op.] 1980). The code of criminal procedure requires trial courts to consider the following criteria in setting bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. Although an accused's ability or inability to make bail is considered, ability to make bail alone, even indigency, does not

5

control the amount of bail. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Milburn*, 8 S.W.3d 422, 427 (Tex. App.— Amarillo 1999, no pet.) ("The amount of bail appellant can post or have posted, however, is not determinative of the amount that should be set, any more than any one of the other factors to be considered is determinative of a reasonable amount to be set.").

Other factors that the court of criminal appeals has directed courts to consider include the accused's work record; the accused's family ties; the accused's length of residency; the accused's prior criminal record, if any; the existence of outstanding bonds, if any; aggravating circumstances alleged to have been involved in the charged offense; and the range of punishment for the charged offense. *Rubac*, 611 S.W.2d at 849–50; *see Ex parte Vasquez*, 558 S.W.2d 477, 479–80 (Tex. Crim. App. 1977) ("And when considering the nature of the offense in setting bail, the punishment permitted by law may be considered."); *Ex parte Scott*, 122 S.W.3d 866, 869 (Tex. App.—Fort Worth 2003, no pet.) ("When the nature of the offense is serious and involves aggravating factors, a lengthy prison sentence following trial is probable."). An accused seeking reduction of bail has the burden of demonstrating that the bail is excessive. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

Benzer has been indicted for aggravated assault with a deadly weapon, two stalking offenses, violating a protective order, and retaliation. *See* Tex.

6

Penal Code Ann. §§ 22.02(a)(2), 36.06(a)(1) (West 2011), 25.07, 42.072(a)(1)(A) (West Supp. 2011). The aggravated assault allegation contains two enhancement paragraphs, potentially exposing Benzer to a punishment range of life in prison or twenty-five to ninety-nine years' confinement if convicted. *See id.* § 12.42(d) (West Supp. 2011). The earlier stalking allegation also contains two enhancement paragraphs, potentially exposing Benzer to a higher range of punishment if convicted. Each of the remaining three offenses expose Benzer to up to ten years' confinement if convicted. *See id.* § 12.34(a) (West 2011). The enhancement paragraphs contained in both the aggravated assault and the stalking offenses allege that Benzer was convicted of aggravated assault against a peace officer in 1988 and retaliation in 1999, both felonies.

Benzer downplays the circumstances surrounding each of the offenses, contending that they are "not based on credible facts" and even suggesting that they were fabricated by his neighbors and by employees of the City of Carrollton. But the aggravated assault offense does allege that Benzer used or exhibited a deadly weapon, a knife; and each of the offenses appear to relate to some ongoing conflict or dispute involving Benzer and one or more individuals who live in the same neighborhood as him.[5] The circumstances of the offenses are not frivolous but, rather, quite serious.

---

[5]Benzer and Diana Swadley have been involved in civil litigation with each other.

7

The record shows that after his arrest for aggravated assault, Benzer was arrested three more times for additional offenses alleged to have been committed against individuals who live in his neighborhood. Thus, each time Benzer posted bail, he reoffended; and not against some random person, but against a member of his neighborhood. The trial court even indicated its concern for the safety of the complainants when in regard to Benzer's reoffending, it commented that "it's obvious that it's a continuing course of action." One police officer opined that Benzer posed a danger to the community; Diana Swadley indicated that it "scares [her] to death" if Benzer were to make bail; and Alexandra Shanafelt, another neighbor of Benzer who lives in a house that shares an alley with Benzer's residence, described Benzer as "scary" and "crazy."[6]

Benzer has lived in Dallas or Carrollton the entire time that his wife, Denise, has known him—almost nineteen years. Denise, who is unemployed, testified that she could not afford to post bonds in the amounts currently set by the trial court, and Benzer's mother testified that her family had no resources to help Benzer post the bonds. At an earlier hearing, Denise said that she and Benzer owned a home, had $2700 in a checking account, had no savings account, owned several old vehicles, and had no family members who could provide any financial assistance. Benzer initially had retained counsel, but the trial court later found Benzer indigent and appointed counsel to represent him.

---

[6]Shanafelt testified that when she was eighteen years old, Benzer flashed a flashlight into her bedroom at 3:00 a.m.

8

Michael Vanhooser and Ivan Hill testified that they have known Benzer for approximately twenty years, that they had employed him in the past, and that they would hire him if he was released from jail. Stephen Howen, an attorney who represented Benzer in several civil matters, had no doubt that Benzer would appear for trial if able to post the bonds. Cami Sandifer, an investigator appointed to assist defense counsel, testified that the five pending cases are interconnected and that Benzer would be of great assistance to defense counsel if Benzer could post the bonds.

Considering all of the appropriate criteria set out above, we cannot conclude that the trial court acted arbitrarily or unreasonably, and therefore abused its discretion, by refusing to lower the bail amounts in Benzer's five pending causes. *See* Tex. Code Crim. Proc. Ann. art. 17.15; *Rubac*, 611 S.W.2d at 849–50. Therefore, we overrule Benzer's sole issue.

## IV. CONCLUSION

Having overruled Benzer's sole issue, we affirm the trial court's order denying habeas corpus relief.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 2, 2012