02-11-284 THRU 288-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00284-CR

NO. 02-11-00285-CR

NO. 02-11-00286-CR

NO. 02-11-00287-CR

NO. 02-11-00288-CR

 

 


 
 
 Ex parte Steven Benzer
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 362nd
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Steven Benzer appeals the trial court’s order denying his pretrial applications
for writ of habeas corpus seeking a reduction of bail pending trial.  We will
affirm.

II.  Background

          Benzer
is a self-employed “broadcast technician” who lives in Carrollton with his wife
and two children.  Before being incarcerated, Benzer frequented the streets of his
neighborhood in order to observe and report what he perceived to be criminal
activity, including ordinance code violations.  Over the years, Benzer has reported
“many complaints” of alleged ordinance violations that occurred within his
neighborhood.[2]  According to his wife, at
some point, Benzer was advised by “several departments within” the City of Carrollton
to document the alleged violations using either an audio or videotaping
device.  Benzer did so and began videotaping anything that he perceived to be a
criminal violation.

          Much
of Benzer’s attention appeared to be focused on the Swadley residence.  Diana
Swadley and her two children, Rachel and Jonathan, live in a house that shares
an alley with the Benzer residence.[3]  Diana agreed that “it would be putting
it mildly to say that there has been an ongoing problem with [Benzer] and the
Swadley family.”[4]

          In
October 2009, Benzer was indicted for aggravated assault with a deadly weapon,
to-wit:  a knife, alleged to have been committed in July 2009 against
Cameron Walter, a friend of Jonathan Swadley who also lives in the same
neighborhood as Benzer.  Benzer posted the $75,000 bond when he was charged and
was released.

          On
November 12, 2009, Benzer was arrested for allegedly stalking Diana Swadley and
her family while they were in their yard.  Benzer posted the $75,000 bond and
was released on November 13, 2009.

          Almost
immediately thereafter, authorities arrested Benzer a third time on November
18, 2009, for allegedly (1) committing another stalking offense against
Diana Swadley (leaving a message on her telephone stating something to the
effect of “things weren’t over yet between him and her”) and (2) violating
a protective order that had been entered by a magistrate.  Bail was originally
set at $1,000,000 for each of these offenses, but the trial court later reduced
the bail to $125,000 for each offense.  Benzer posted bonds for each offense on
or about April 15, 2010, and was released.  At some point, the trial court
raised the bail in the aggravated assault and the first stalking causes from
$75,000 each to $125,000 each.  Benzer was also able to post bonds for these
offenses on April 15, 2010.

          Approximately
one month later, in May 2010, Benzer was arrested a fourth time for allegedly
retaliating against Cameron Walter, the complainant in the aggravated assault
cause, by verbally threatening him and blocking his vehicle.  The trial court
set bail at $25,000 for this offense, but it revoked the bail in each of the
other causes (all had been set at $125,000) because Benzer missed a hearing, but
it later reinstated the bail for each cause at $200,000.  Benzer was unable to
post four $200,000 bonds and the $25,000 bond, and he filed motions to reduce
the bonds and this habeas corpus action, all of which were denied by the trial
court.

III. 
Bail Reduction

          In
his only issue, Benzer argues that the trial court abused its discretion by not
reducing what he contends are excessive and unconstitutionally oppressive bail amounts
that were set in each of the causes pending in the trial court.  He contends
that the bail is not only calculated to ensure his continued detention, but that
he will be prevented from receiving effective assistance of counsel at trial
due to the “inherent complexities of untangling numerous hours of video.”  Benzer
prays that we lower the total amount of bail to an amount that will assure his
presence at trial.

          We
review the trial court’s denial of a bond-reduction request for an abuse of
discretion.  See Ex parte Spaulding, 612 S.W.2d 509, 511
(Tex. Crim. App. 1981); Ex parte Rubac, 611 S.W.2d 848, 849–50
(Tex. Crim. App. [Panel Op.] 1981); see also Tex. Code Crim. Proc. Ann.
art. 17.15 (West 2005) (giving trial court discretion to set bail amount).  To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or unreasonable.  Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh’g). 
Merely because a trial court may decide a matter within its discretion in a
different manner than an appellate court would in a similar circumstance does
not demonstrate that an abuse of discretion has occurred.  Id.

          In
general, all persons accused of noncapital crimes have the right to bail
pending trial.  Tex. Code Crim. Proc. Ann. art. 1.07 (West 2005).  But
excessive bail is prohibited by both the federal and state constitutions.  See
U.S. Const. amend. VIII; Tex. Const. art. I, § 13.  The primary purpose of
an appearance bond is to secure the defendant’s presence in court.  Ex parte
Vance, 608 S.W.2d 681, 683 (Tex. Crim. App. [Panel Op.] 1980).  The code of
criminal procedure requires trial courts to consider the following criteria in
setting bail:

          1.    The
bail shall be sufficiently high to give reasonable assurance that the undertaking
will be complied with.

 

          2.    The
power to require bail is not to be so used as to make it an instrument of
oppression.

 

          3.    The
nature of the offense and the circumstances under which it was committed are to
be considered.

 

          4.    The
ability to make bail is to be regarded, and proof may be taken upon this point.

 

          5.    The
future safety of a victim of the alleged offense and the community shall be
considered.

Tex.
Code Crim. Proc. Ann. art. 17.15.  Although an accused’s ability or inability
to make bail is considered, ability to make bail alone, even indigency, does
not control the amount of bail.  Ex parte Charlesworth, 600 S.W.2d
316, 317 (Tex. Crim. App. [Panel Op.] 1980); Ex parte Milburn, 8
S.W.3d 422, 427 (Tex. App.—Amarillo 1999, no pet.) (“The amount of bail
appellant can post or have posted, however, is not determinative of the amount
that should be set, any more than any one of the other factors to be considered
is determinative of a reasonable amount to be set.”).

          Other
factors that the court of criminal appeals has directed courts to consider
include the accused’s work record; the accused’s family ties; the accused’s
length of residency; the accused’s prior criminal record, if any; the existence
of outstanding bonds, if any; aggravating circumstances alleged to have been
involved in the charged offense; and the range of punishment for the charged
offense.  Rubac, 611 S.W.2d at 849–50; see Ex parte
Vasquez, 558 S.W.2d 477, 479–80 (Tex. Crim. App. 1977) (“And when
considering the nature of the offense in setting bail, the punishment permitted
by law may be considered.”); Ex parte Scott, 122 S.W.3d 866, 869
(Tex. App.—Fort Worth 2003, no pet.) (“When the nature of the offense is
serious and involves aggravating factors, a lengthy prison sentence following
trial is probable.”).  An accused seeking reduction of bail has the burden of
demonstrating that the bail is excessive.  Ex parte Rodriguez, 595
S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

          Benzer
has been indicted for aggravated assault with a deadly weapon, two stalking
offenses, violating a protective order, and retaliation.  See Tex. Penal
Code Ann. §§ 22.02(a)(2), 36.06(a)(1) (West 2011), 25.07, 42.072(a)(1)(A)
(West Supp. 2011).  The aggravated assault allegation contains two enhancement
paragraphs, potentially exposing Benzer to a punishment range of life in prison
or twenty-five to ninety-nine years’ confinement if convicted.  See id.
§ 12.42(d) (West Supp. 2011).  The earlier stalking allegation also
contains two enhancement paragraphs, potentially exposing Benzer to a higher
range of punishment if convicted.  Each of the remaining three offenses expose
Benzer to up to ten years’ confinement if convicted.  See id. § 12.34(a)
(West 2011).  The enhancement paragraphs contained in both the aggravated
assault and the stalking offenses allege that Benzer was convicted of
aggravated assault against a peace officer in 1988 and retaliation in 1999,
both felonies.

          Benzer
downplays the circumstances surrounding each of the offenses, contending that
they are “not based on credible facts” and even suggesting that they were
fabricated by his neighbors and by employees of the City of Carrollton.  But the
aggravated assault offense does allege that Benzer used or exhibited a deadly
weapon, a knife; and each of the offenses appear to relate to some ongoing
conflict or dispute involving Benzer and one or more individuals who live in the
same neighborhood as him.[5]  The circumstances of the
offenses are not frivolous but, rather, quite serious.

          The
record shows that after his arrest for aggravated assault, Benzer was arrested
three more times for additional offenses alleged to have been committed against
individuals who live in his neighborhood.  Thus, each time Benzer posted bail,
he reoffended; and not against some random person, but against a member of his
neighborhood.  The trial court even indicated its concern for the safety of the
complainants when in regard to Benzer’s reoffending, it commented that “it’s
obvious that it’s a continuing course of action.”  One police officer opined
that Benzer posed a danger to the community; Diana Swadley indicated that it
“scares [her] to death” if Benzer were to make bail; and Alexandra Shanafelt, another
neighbor of Benzer who lives in a house that shares an alley with Benzer’s
residence, described Benzer as “scary” and “crazy.”[6]

          Benzer
has lived in Dallas or Carrollton the entire time that his wife, Denise, has
known him—almost nineteen years.  Denise, who is unemployed, testified that she
could not afford to post bonds in the amounts currently set by the trial court,
and Benzer’s mother testified that her family had no resources to help Benzer
post the bonds.  At an earlier hearing, Denise said that she and Benzer owned a
home, had $2700 in a checking account, had no savings account, owned several
old vehicles, and had no family members who could provide any financial
assistance.  Benzer initially had retained counsel, but the trial court later
found Benzer indigent and appointed counsel to represent him.

          Michael
Vanhooser and Ivan Hill testified that they have known Benzer for approximately
twenty years, that they had employed him in the past, and that they would hire
him if he was released from jail.  Stephen Howen, an attorney who represented
Benzer in several civil matters, had no doubt that Benzer would appear for
trial if able to post the bonds.  Cami Sandifer, an investigator appointed to
assist defense counsel, testified that the five pending cases are
interconnected and that Benzer would be of great assistance to defense counsel
if Benzer could post the bonds.

          Considering
all of the appropriate criteria set out above, we cannot conclude that the
trial court acted arbitrarily or unreasonably, and therefore abused its
discretion, by refusing to lower the bail amounts in Benzer’s five pending
causes.  See Tex. Code Crim. Proc. Ann. art. 17.15; Rubac, 611
S.W.2d at 849–50.  Therefore, we overrule Benzer’s sole issue.

IV.  Conclusion

          Having
overruled Benzer’s sole issue, we affirm the trial court’s order denying habeas
corpus relief.

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 2, 2012









[1]See Tex. R. App. P. 47.4.





[2]One investigator
conservatively estimated that Benzer called 9-1-1 “easily 225” times over the
course of a few months during 2009.  Benzer’s complaints were so numerous that
he apparently acquired quite a reputation; Benzer’s wife, Denise, claimed that
one Carrollton police officer and three Carrollton dispatch officers were fired
for egging his house.





[3]An investigator appointed
to assist Benzer’s trial attorney testified that she had not seen the Swadleys
at their residence for over two weeks.





[4]Benzer’s wife admitted
that Benzer had been videotaping the Swadleys up to thirty minutes every single
day.





[5]Benzer and Diana Swadley
have been involved in civil litigation with each other.





[6]Shanafelt testified that
when she was eighteen years old, Benzer flashed a flashlight into her bedroom
at 3:00 a.m.