**Ex parte David VANCE.**

**Nos. 65346, 65347.**

Court of Criminal Appeals of Texas, Panel No. 2.

Dec. 10, 1980.

Mark C. Hall, Lubbock, for appellant.

Robert Huttash, State's Atty., Alfred Walker, Asst. State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from an order entered in a habeas corpus proceeding in the 237th District Court of Lubbock County setting petitioner's bail on two indictments for aggravated kidnapping at $100,000 each.

The petitioner's bail was originally set at $250,000 for each offense. The petitioner's motion to reduce bail was denied on June 25, 1980; however, on July 11, 1980, the trial court again entertained petitioner's application for writ of habeas corpus and reduced the bail to $100,000 in each cause. The petitioner gave notice of appeal from this ruling.

Initially, we shall address the assertion advanced by the State that the petitioner was not entitled to a hearing on his second application for writ of habeas corpus. The State maintains that the trial court was without authority to conduct a hearing on the second application, or in the alternative, urges that the petitioner has "no standing to appeal from or complain of the gratuitous proceedings and actions taken in the trial court." The State reaches this conclusion through its interpretation of Article 11.59, Vernon's Ann.C.C.P., which recites:

"A party may obtain the writ of habeas corpus a second time by stating in a motion therefor that since the hearing of his first motion important testimony has been obtained which it was not in his power to produce at the former hearing. He shall also set forth the testimony so newly discovered; and if it be that of a witness, the affidavit of the witness shall also accompany such motion."

We do not construe this provision of the Code of Criminal Procedure as prohibiting trial courts from entertaining second applications for writ of habeas corpus. Article 11.04, Vernon's Ann.C.C.P. provides:

"Every provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it."

In this case, new evidence was presented by the State and the petitioner at the second hearing. The record does not reflect the trial court's reason for granting petitioner a second hearing; however, we hold that the trial court did not abuse its discretion in so doing.

At the hearing on the motion to reduce bail on July 11, the trial court took judicial notice of the evidence presented on June 25. The record reflects that on May 25, 1980, the petitioner entered the Marine recruiting office in Lubbock with a rifle. The petitioner ordered the four men in the office against the wall and then demanded that the Marines give him $1200, which he felt

the Marines owed him. One of the four hostages immediately escaped through the back door. Another was allowed to leave when the petitioner was persuaded that the news of the abduction would be harmful to the hostage's pregnant wife. The third hostage went to the bathroom and did not come back. The petitioner was subdued three hours after the ordeal began, as he and the remaining hostage were returning from the bathroom.

Article 17.15, Vernon's Ann.C.C.P. provides:

"The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

   1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

   2. The power to require bail is not to be so used as to make it an instrument of oppression.

   3. The nature of the offense and the circumstances under which it was committed are to be considered.

   4. The ability to make bail is to be regarded, and proof may be taken upon this point."

The petitioner's wife testified at the hearing that she and petitioner had been married eight and a half years and had three minor children. The petitioner was employed as a "roughnecker" from December 1973 until three weeks before the time of the offense. The petitioner's wife was unemployed. Candy Vance testified that she and her husband owned no real property and no valuable personal property. She stated that the petitioner was entitled to approximately $3,700 from a pension and profit sharing plan. By the time of the second hearing, $500 of the family's funds had been used to retain a psychiatrist and several of the family's belongings had been repossessed. There was evidence that the petitioner would have to come up with almost $35,000 as well as collateral for the remainder of the bail to obtain his release.

It is established that the ability or inability of an accused to make bail does not alone control in determining the amount of bail. *Ex Parte Plumb*, 595 S.W.2d 544 (Tex.Cr.App.1980); *Ex Parte Clark*, 537 S.W.2d 40 (Tex.Cr.App.1976). The nature of the offense or offenses and the circumstances under which it or they were committed are also to be considered. *Ex Parte Plumb*, supra.

The primary purpose of an appearance bond is to secure the presence of the defendant in court at his trial. *Ex Parte Ivey*, 594 S.W.2d 98 (Tex.Cr.App. 1980). While the bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, the power to require bail is not to be so used as to make it an instrument of oppression. See *Ex Parte Keller*, 595 S.W.2d 531 (Tex.Cr. App.1980).

In the present case, the petitioner stands charged with a first degree felony and a second degree felony, arising out of the same transaction. The petitioner had no prior criminal record. Petitioner and his family had been settled in Levelland for seven years. In consideration of the factors presented, we conclude that the bail set was excessive.

The petitioner's request for a reduction of bail is granted and bail is set in the sum of $10,000 for each cause.

It is so ordered.