COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-03-045-CR
 
EX PARTE
OAKA DONREZ ADAMS
 
------------
FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
       
Appellant Oaka Donrez Adams appeals from the denial of his request for reduction
of pre-indictment bond in this capital murder case. We affirm.
BACKGROUND
       
Appellant was arrested in December 2002 for a capital murder that occurred on
July 30, 2002 in Fort Worth, Texas. When Appellant was arrested, the magistrate
set Appellant's bond at $300,000.  Appellant filed an application for writ
of habeas corpus seeking to reduce the amount of his pre-indictment bond. 
The magistrate granted the writ and held a hearing on January 29, 2003, after
which he found there was probable cause to further detain Appellant for
presentation of the case to the grand jury,(2)
and that $300,000 is a reasonable bond under the circumstances. On January
29, 2003, the trial court adopted the actions of the magistrate and signed an
order on February 24, 2003 denying all the relief requested by Appellant.
       
In three points on appeal, Appellant contends the trial court erred in refusing
to reduce the bond because: $300,000 is an excessive amount; the evidence is
insufficient to sustain such an amount; and the evidence is insufficient to
sustain a finding of probable cause for Appellant's continued detention. The
State responds that Appellant did not carry his burden to show the amount of the
bond was excessive. Appellant's brief combines the argument for his three points
and we will do likewise.
DISCUSSION
Standard
of review
       
We review the trial court's denial of a bond-reduction request under an abuse of
discretion standard. See Ex parte Dueitt, 529 S.W.2d 531, 532 (Tex.
Crim. App. 1975). Appellant has the burden to show the trial court that the bond
amount as set is excessive. See Ex parte Rubac, 611 S.W.2d 848, 849
(Tex. Crim. App. [Panel Op.] 1981). The code of criminal procedure provides
guidelines for establishing the amount of a criminal defendant's bond:
               
Art. 17.15. Rules for fixing amount of bail

        
 The amount of bail to be required in any case is to be regulated by the court,
 judge, magistrate or officer taking the bail; they are to be governed in the
 exercise of this discretion by the Constitution and by the following rules:
 
 1. The bail shall be sufficiently high
 to give reasonable assurance that the undertaking will be complied with.
 2. The power to require bail is not to
 be so used as to make it an instrument of oppression.
 3. The nature of the offense and the
 circumstances under which it was committed are to be considered.
 4. The ability to make bail is to be
 regarded, and proof may be taken upon this point.
 5. The future safety of a victim of
 the alleged offense and the community shall be considered.
 
 

Tex. Code Crim. Proc. Ann. art. 17.15
(Vernon Supp. 2003).
       
In addition to considering these factors, there are other factors to be weighed
in determining the amount of bond: (1) the accused's work record; (2) the
accused's family and community ties; (3) the accused's length of residency; (4)
the accused's prior criminal record; (5) the accused's conformity with previous
bail conditions; (6) the existence of other outstanding bail bonds, if any; and
(7) aggravating circumstances alleged to have been involved in the charged
offense. See Rubac, 611 S.W.2d at 849-50. Although Rubac
involved the setting of an appeal bond after conviction, numerous courts,
including this one, have applied the additional Rubac factors in the
review of cases involving pre-trial bond. See Gonzalez v. State, 996
S.W.2d 350, 352-53 (Tex. App.--Houston [14th Dist.] 1999, no pet.); Ex
parte Emery, 970 S.W.2d 144, 145 (Tex. App.--Waco 1998, no pet.); Ex
parte Brown, 959 S.W.2d 369, 372 (Tex. App.--Fort Worth 1998, no pet.); Smith
v. State, 829 S.W.2d 885, 887-88 (Tex. App.--Houston [1st Dist.]
1992, pet. ref'd).
       
The primary object or purpose of an appearance bond is to secure the presence of
the defendant in court upon the trial of the accusation against him. Ex
parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). While the amount
of bond should be sufficiently high to give reasonable assurance that the
undertaking will be complied with, the power to require bond is not to be used
so as to make it an instrument of oppression. Id. When considering the
nature of the offense in setting bond, the punishment permitted by law may be
considered. Id. at 479-80. The nature of the offense and the
circumstances under which it was committed are factors to be considered in
setting bond, as is the future safety of the community and the victim of the
alleged offense. Ex parte Beard, 92 S.W.3d 566, 568 (Tex. App.--Austin
2002, pet. ref'd). The defendant's ability to make bail also must be considered,
but is not of itself controlling. Ex parte Gentry, 615 S.W.2d 228, 231
(Tex. Crim. App. [Panel Op.] 1981).
Facts
developed at the writ hearing
       
At the hearing, the State introduced into evidence the arrest warrant affidavit
of Fort Worth Detective T. W. Boetcher which states the facts upon which he
bases his belief that Appellant intentionally killed the victim by shooting him
with a handgun while Appellant was in the course of committing or attempting to
commit robbery of the victim. Detective Boetcher interviewed D'Shanee Filer who
said she arranged for two men she knew to sell fifteen pounds of marijuana to
two other men she knew from Louisiana. The drug transaction took place at her
house. When the two sellers, whom she knew as "T Bone" and "Trey
K" arrived, there were two other black males with them. All four of the
sellers had pistols in their hands and after words were exchanged with the
buyers, Filer took her child and fled from the room. She then heard gunshots and
went into the garage because she feared for her safety. When she returned, one
of the buyers was dead and the other wounded. She did not see who shot whom. She
later identified "T Bone" as Terrance Brown, and "Trey K" as
Marcus Johnson. She stated that the wounded buyer had thrown a Crown Royal bag
containing money out the back patio door after the shooting happened and before
the police arrived.
       
The deceased buyer was shot with a 9mm handgun and casings were recovered from
Filer's living room. The police also recovered from Filer's backyard a Crown
Royal whiskey bag that contained $6,480 in various denominations.
       
According to the facts stated in Detective Boetcher's affidavit, while Terrance
Brown was in Tulsa, Oklahoma he was arrested for this offense on a capital
murder warrant. Detective Boetcher interviewed him in jail, and Brown admitted
his knowledge of this offense and identified the other three parties involved:
Appellant, Marcus Johnson, and Donald Overton. Brown stated that on July 30,
2002, he was in Arlington Memorial Hospital due to alcohol intoxication. He
stayed there for several hours until Appellant arrived and told him they were
going over to Filer's residence. Brown stated that upon arriving at that
location he waited in the vehicle because he was ill, but Appellant asked him to
come inside. When he went in the front door he was unarmed, but the other three
men produced handguns. When the deceased started to run to the front door,
Johnson and Overton started shooting. After the shooting, Appellant drove the
getaway car and was yelling that it was supposed to be a "straight up
jacking" (which Brown says refers to a robbery), and that the deceased was
supposed to have $10,000 on him.
       
Appellant's wife Tiffany Adams is the only witness who testified at the writ
hearing. She and Appellant were married in June 2001 and they have a daughter
who was eleven months old at the time of the hearing. When Appellant decided to
become an independent trucker, in order to save expenses Tiffany and her
daughter moved to Tulsa to live with Tiffany's parents. Tiffany testified that
after Appellant bought his truck and started his independent long-haul trucking
business, she wasn't certain where he lived -- either on the road or perhaps
with his parents in Tarrant County, Texas, but not in Oklahoma. He would call
her at least once a week and usually visit her twice a month in Oklahoma.
Tiffany is aware that Appellant is a convicted felon who has "served his
time," but she does not know the nature of the offense for which he was
convicted or the length of his confinement.
       
Tiffany is a commercial loan processor for a bank in Oklahoma and she earns
$30,000 per year. Her father prepared the joint federal income tax return that
she and Appellant filed, and she does not know what their income was or how much
Appellant makes. Appellant owns his own truck which is worth about $5,000, and
does not have a lien against it. Tiffany testified she contacted two bondsmen
about making Appellant's bond and was told there would be a ten to twenty
percent fee to make the bond. She determined that the total amount she could
contribute to a bond would be about $10,000.
Analysis
       
The evidence from the writ hearing revealed there were aggravating circumstances
present during the episode that resulted in the capital murder. Appellant knew
in advance that he was going over to Filer's house to rob two individuals. The
four "sellers" lured the two prospective drug buyers over to Filer's
house using the pretext of selling them narcotics. During the drug transaction,
all four of the sellers had their guns drawn and at least two of the people with
Appellant started shooting the buyers; one died and the other was wounded. These
actions endangered Filer and her child who were present in the house at the time
of the killing.
       
Appellant's ties to the community are tenuous at best. His trucking business is
by its very nature transient and even Appellant's wife is not certain where
Appellant lives. Although his wife testified she could make a $10,000 bond, the
ability of an accused to post bond is merely one factor to be considered in
determining the appropriate bond. See Ex parte Vance, 608 S.W.2d 681,
683 (Tex. Crim. App. [Panel Op.] 1980). If the ability to make bond in a
specified amount was controlling, then the role of the trial court in setting
bond would be completely eliminated, and the accused would be in the unique
posture of determining what his bond should be. See Ex parte Miller,
631 S.W.2d 825, 827 (Tex. App.--Fort Worth 1982, pet. ref'd).
       
Appellant has a prior criminal history--he is a convicted felon. If convicted of
capital murder, Appellant faces a potential punishment range of death or
imprisonment for life. Tex. Penal Code Ann. §§ 12.31, 19.03(b) (Vernon 2003).
Further, a person can be found guilty as a party to capital murder and be
subject to the death penalty. Tex. Code Crim. Proc. Ann. art. 37.071, §
2(b)(2).
       
Taking into consideration all the appropriate factors of article 17.15 and Rubac,
we hold that the $300,000 pre-trial bond, while high, is not so high as to be an
abuse of discretion under the aggravated facts of this case. See Brown,
959 S.W.2d at 373 (affirming denial of reduction of $500,000 pre-trial bond in
capital murder case). We overrule Appellant's three points.
CONCLUSION
       
Having overruled all of Appellant's points, we affirm the judgment of the trial
court.
 
                                                           
DIXON W. HOLMAN
                                                           
JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and HOLMAN, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: June 12, 2003

1. See Tex. R. App. P. 47.4.
2. Although the State's brief mentions that four days
after the trial court denied Appellant's motion to reduce his bond, Appellant
was indicted, that fact was obviously not before the trial court and will not be
considered by this court.