# NOS. 12-22-00209-CR
# 12-22-00210-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

*EX PARTE:*

*LANCE CHARLES CONKLIN*

§  *APPEAL FROM THE 241ST*

§  *JUDICIAL DISTRICT COURT*

§  *SMITH COUNTY, TEXAS*

### *MEMORANDUM OPINION*

Lance Charles Conklin appeals the trial court's denial of his applications for writ of habeas corpus seeking bail reduction for two unindicted charges: one for continuous sexual abuse of a child and one for indecency with a child. We reverse and remand.

## BACKGROUND

On May 17, 2022, the 241st District Court in Smith County, Texas signed two warrants for Appellant's arrest: one for indecency with a child by sexual contact, a second-degree felony, and one for continuous sexual abuse of a child, a first-degree felony.[1] The trial court set the bond at $500,000 on the indecency charge and $1,000,000 for the continuous sexual abuse charge. Appellant was arrested on both charges and filed a writ of habeas corpus seeking a bail reduction to $100,000 in each case, for a total of $200,000, with the condition that Appellant wear a global positioning system (GPS) device and remain in Smith County, with the exception of travel for work.

---

[1] Indecency with a child by sexual contact is a felony of the second degree, punishable by not less than two nor more than twenty years of imprisonment. TEX. PENAL CODE ANN. §§ 12.33(a) (West 2019); 21.11(a)(1), (d) (West 2019). Continuous sexual abuse of a child is a first degree felony punishable by not less than twenty five years to life imprisonment. *Id.* § 21.02 (b)(1), (2)(A), (h) (West Supp. 2022). A defendant serving a sentence for continuous sexual abuse of a child is not entitled to parole under Texas law. TEX. GOV'T CODE ANN. § 508.145(a)(2) (West Supp. 2022).

The trial court held an evidentiary hearing on Appellant's application for writ of habeas corpus. Appellant called his sister, Amanda Carsten, who testified about Appellant's community ties, work history, and finances. Carsten testified that she contacted several bondsmen and learned that Appellant would need to post $450,000, obtain "several co-signors," and provide proof of assets up to the full amount of the two bonds. Carsten testified that Appellant was unable to make bond as it was currently set in both cases. The State entered the arrest warrant affidavits and a print-off of Appellant's TCIC/NCIC criminal history without objection. After hearing evidence and argument of counsel, the trial court denied Appellant's application. This appeal followed.

## BOND AMOUNTS

In one issue, Appellant argues that the trial court abused its discretion in declining to reduce the amount of his bail bonds in each case, which he contends are facially excessive and oppressive in consideration of his economic resources and ties to the community.

### Standard of Review and Applicable Law

The decision regarding a proper bail amount lies within the sound discretion of the trial court. TEX. CODE CRIM. PROC. ANN. art. 17.15 (West Supp. 2022). Accordingly, we review the trial court's denial of a request to reduce bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (per curiam). In determining whether the trial court abused its discretion, we do not substitute our judgment for that of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). The purpose of our review is to determine whether the trial court's decision was made without reference to any guiding rules or principles of law, or in other words, whether the decision was arbitrary or unreasonable. *Id*. at 380. An abuse of discretion occurs when a trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id*. at 391 (op. on reh'g). The burden of proof is on petitioner for reduction in bail to show that the bail set is excessive. *Rubac*, 611 S.W.2d at 849.

The primary purpose of setting a pretrial bond should be to secure Appellant's presence at trial. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Rincon*, Nos. 04-13-00715-CR—04-13-00718-CR, 2014 WL 2443870, at *1 (Tex. App.—San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication). The amount of

the bond necessary to achieve that purpose is committed to the trial court's sound discretion, although its discretion is bounded and guided by constitutional and statutory provisions. *See Ex parte Estrada*, 398 S.W.3d 723, 724 (Tex. App.–San Antonio 2008, no pet.). The federal constitution, our state constitution, and our state laws prohibit "excessive" bail. U.S. CONST. Amend. VIII; TEX. CONST. art. I, § 13; TEX. CODE CRIM. PROC. ANN. art. 1.09 (West 2005).

Article 17.15 of the code of criminal procedure provides that "bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with[;]" however, "[t]he power to require bail is not to be so used as to make it an instrument of oppression." TEX. CODE CRIM. PROC. ANN. art. 17.15(1), (2). Although a defendant's ability to make bail must be considered, it is not a controlling consideration. *See id*. art. 17.15(4); *Rodriguez*, 595 S.W.2d at 550. The primary considerations when assessing the reasonableness of bail are the punishments that can be imposed and the nature of the offenses. *Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 917 (Tex. App.—San Antonio 2022, no pet.); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Article 17.15 also requires the consideration of the future safety of the victim of the alleged offense, law enforcement, and the community. TEX. CODE CRIM. PROC. ANN. art. 17.15 (5).

Along with the factors in Article 17.15, courts have held there are seven additional factors to be weighed in determining the amount of bond: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Rubac,* 611 S.W.2d at 849–50.[2]

## The Evidence

We will begin our analysis by summarizing the evidence produced at the hearing regarding the primary considerations, the nature of the offense and the potential punishments, as well as the other factors discussed above.

    a. *Nature of the Offenses and Potential Punishment*

---

[2] Though *Rubac* involved the setting of an appeal bond after conviction, Texas courts have applied the *Rubac* factors in the review of cases involving pre-trial bail. *See Ex parte Emery*, 970 S.W.2d 144, 145 (Tex. App.—Waco 1998, no pet.); *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth 1998, no pet.); *Smith v. State*, 829 S.W.2d 885, 887 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

The nature of the offenses and the potential punishment weigh in favor of a high bail amount. If convicted of the continuous sexual abuse of a child charge, Appellant faces twenty-five years to life in prison, without the possibility of parole. *See* TEX. PENAL CODE ANN. § 21.02 (h) (West Supp. 2022); *see also* TEX. GOV'T CODE ANN. § 508.145 (a)(2) (West Supp. 2022). Indecency with a child by sexual contact is punishable by two to twenty years of imprisonment. TEX. PENAL CODE ANN. § 12.33(a) (West 2019); 21.11(d) (West 2019). Furthermore, if Appellant were convicted of both offenses in separate proceedings, the trial court could order Appellant to serve the sentences consecutively. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08 (West 2018).

b. *Safety of Victim and Community*

The safety of the victim and the community support a high bail amount. *See* TEX. CODE CRIM. PROC. art. 17.15(a)(5) (West 2019). The record indicates that Appellant intends to reside at his Mineola residence if released on bond, which is where some of the alleged incidents of sexual abuse took place. Appellant is charged with engaging in approximately twenty different instances of sexual contact with a child younger than fourteen, including oral and anal penetration. Further, the alleged victim of these assaults resides near Appellant in the small part of Mineola that is situated within Smith County. Moreover, the Appellant is charged with indecency with a child involving a second victim.

c. *Appellant's Financial Resources and Ability to Make Bail*

Carsten testified that Appellant owns a 2006 Ford Ranger truck, unencumbered by any liens, worth approximately $5,000, and has approximately $13,000 in cash in his checking account. Carsten testified that Appellant has a minivan he financed through a bank to which he is still making payments and Carsten was unsure of the minivan's value. She testified that Appellant has no savings or retirement accounts. Carsten testified that Appellant "has two recreational vehicles (RV's) in his name" but she owns one of them, which is worth $40,000, and the other Appellant personally financed to an elderly couple. She explained that Appellant originally financed the second RV through a bank and owes approximately $26,000 to the bank for the RV. Carsten was unsure how much the couple is paying Appellant towards the RV. Carsten owns the land and home where Appellant resides, free of any liens, and it is worth approximately $100,000. Carsten testified that Appellant could afford to pay $300 monthly for the cost of GPS monitoring if released on bond.

4

Carsten contacted several bondsmen in an attempt to make bail for Appellant and was told that she would have to put down $450,000 in cash, find co-signors, and prove that Appellant had assets totaling the combined bond amount of $1,500,000. Carsten testified that Appellant could not make the bonds in these cases.

        d. ***Rubac*** *Factors*

Carsten testified that Appellant is a thirty-eight-year-old man that has resided in Smith County almost his entire life. He resided at her home in Mineola prior to his arrest and would return to her home to live if released on bond. Carsten testified that Appellant has no contact with their Father or other siblings. She testified that Appellant was employed by a drilling company when he was arrested and would seek employment if released on bond. Carsten testified that Appellant does have a criminal history but has never failed to appear for a court date. However, Carsten testified that Appellant had previously been revoked from probation on a prior offense. Carsten testified that Appellant learned about the current charges in a certified letter and contacted law enforcement but was not told of the outstanding warrants for his arrest. Carsten acknowledged that Appellant was arrested by the United States Fugitive Task Force. It appears from the face of the arrest warrants that Appellant was arrested on May 17, the same day the judge signed the warrants.

**Analysis**

Appellant argues that the combined amount of the bonds is approximately twenty times higher than what Appellant and his family can reasonably provide and amounts to a de facto setting of no bond. He argues that he clearly demonstrated to the trial court what his family could furnish as a reasonable amount of bail.

The State counters that the bonds are not excessive given the nature of the offenses, the potential punishments, and the safety of the community. The State argues that Appellant is a potential flight risk because he "faces the very real possibility of never getting out of prison if he is convicted of the [] charges" and the "State's cases are well founded factually – including Appellant's admissions of guilt." In further support of their argument that Appellant presents a flight risk, the State points to the fact that Appellant did not turn himself in on the warrants and was instead arrested by the United States Fugitive Task Force. The State also argues that the fact Appellant has access to $13,000 in his checking account, access to other valuable assets, and is currently unemployed, give rise to the inference that Appellant will flee and not face the charges.

We disagree with Appellant that the record demonstrates that the bonds are *twenty* times the amount that Appellant can afford and thus a de facto setting of no bond. We are unsure how Appellant arrived at the "twenty times" calculation. His brief does not explain how he arrived at the calculation and it is unclear to this Court from the evidence how he arrived at this calculation. The evidence shows that Appellant has $13,000 in liquidated assets and owns a truck valued at $5,000. With respect to the RV and the minivan that Appellant owns, it is unclear what equity, if any, Appellant has in the assets. The rest of the assets discussed belong to Appellant's sister, and she did not expressly state that she would liquidate those assets to help Appellant post the bond, co-sign a bond, or allow Appellant to put up those assets as collateral. Moreover, Carsten testified that no bondsmen agreed to post a bond for Appellant unless he could put down $450,000 in cash, secure co-signors, and prove ownership of assets in the amount of the bonds. Appellant's trial counsel asked that the trial court set the bonds at $100,000 on each case, for a combined total of $200,000, in addition to $300 a month for GPS monitoring pending trial, however Carsten did not testify that Appellant could afford to post a combined $200,000 bond. Thus, we cannot conclude, as Appellant urges us to, that this is a de facto setting of no bond. *See Ex parte Flores*, No. 12-21-00079-CR, 2021 WL 3922919, at *2 (Tex. App.—Tyler Sept. 1, 2021, no pet.) (mem. op., not designated for publication) (de facto setting of no bond where court set combined bonds of $825,000, eleven times what the appellant could afford, where the appellant's sister-in-law testified the appellant could afford a $75,000 bond).

Nonetheless, we can conclude, based on the evidence, that the bonds are substantially higher than Appellant can realistically financially afford. *See Ramirez-Hernandez*, 642 S.W.3d at 920 (defendant should ordinarily offer evidence of his available resources and unsuccessful attempts to post bail in current amount). However, a defendant's inability to make bail does not automatically render the amounts excessive. *Ex parte Mazuera*, No. 01-21-00612-CR, 2022 WL 1110989, at *9 (Tex. App.—Houston [1st Dist.] Apr. 14, 2022, no pet.) (mem. op., not designated for publication); *see also Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980). If a defendant's ability to make bail controlled, then the trial court's role in setting bail amounts would be eliminated and the defendant would be in the position to determine the proper amount of bail, which is antithetical to the purpose of a bond. *See Milner v. State*, 263 S.W.3d 146, 150 (Tex. App.—Houston [1st Dist.] 2006, no pet.). But, bail set in an amount that cannot be satisfied has the potential to displace the presumption of innocence. *Mazuera*, 2022 WL

1110989, at *9; *see also* **Ex parte Bogia**, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Appellant was arrested on the warrants in this case on May 17, 2022. His inability to make bail or post a bond since that time is a factor to be considered. *See* **Mazuera**, 2022 WL 1110989, at *9; *see also* **Rincon**, 2014 WL 2443870, at *3. When bail is so high that a person cannot realistically pay for it, the trial court essentially displaces the presumption of innocence. *See* **Mazuera**, 2022 WL 1110989, at *10. Bail cannot be used as an instrument of oppression and bail set in a particular amount, when it assumes that the defendant cannot afford bail in that amount becomes oppressive. *Id.*; *see also* **Ex parte Durst**, 148 S.W.3d 496, 499 (Tex. App.— Houston [14th Dist.] 2004, no pet.) (where bail amount set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression"). Here, there is no direct evidence that the trial court set Appellant's bonds at $1,000,000 and $500,000 for the express purpose of keeping Appellant incarcerated. *cf.* **Ex parte Harris**, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (trial court stated, "[it would] rather see him in jail than to see someone's life taken"). But the law only requires bail be set in an amount high enough to give reasonable assurance that a defendant will appear for trial. Tex. Code Crim. Proc. art. 17.15(1). Bail amounts in excess of seven figures are almost never required, even in capital cases. *See* **Flores**, 2021 WL 3922919, at *4 (citing **Ludwig v. State**, 812 S.W.2d 323, 323 (Tex. Crim. App. 1991)).

Although the appropriate amount of bail is an individualized determination, a review of other cases can be instructive. *See id.*, at * 11. While courts traditionally set high bonds in cases involving offenses against children, the right to a reasonable bail is a complement to and based on the presumption of innocence. *Id.* The repellant nature of the accusation does not diminish the presumption of the accused's innocence and the provision in Article 17.15 providing "[t]he power to require bail is not to be used as to make it an instrument of oppression" mandates that bail is not to be used to insure pre-conviction punishment. *Id.*; Tex. Code Crim. Proc. art. 17.15(a)(2).

In **Clemons**, the defendant was charged with two cases of aggravated sexual assault of a child and two cases of indecency with a child. 220 S.W.3d at 177. Initially, total bail was set at $600,000. *Id.* After a hearing, the trial court reduced total bail for all cases to $400,000 ($75,000 in each of the indecency cases and $150,000 and $100,000 in the aggravated sexual

assault cases). On appeal, the Eastland Court of Appeals affirmed. *Id.* at 179. However, in **Clemons**, the defendant attempted to persuade his wife to flee to Mexico with him. *See id.* He also told several persons that he would kill himself rather than go to prison. *See id.* There are no such circumstances present in the instant case. Moreover, while the State argues that Appellant is a flight risk, there is no direct evidence to suggest that he would flee if released on bail pending trial.

We acknowledge that Appellant was arrested by the "fugitive" task force, but it appears from the record he was arrested the same day the warrants were issued. The State offered no testimony or evidence about the circumstances surrounding Appellant's arrest. And Appellant's sister offered the following testimony regarding the circumstances surrounding Appellant learning about the charges and his subsequent arrest:

> Q: Are you aware of the fact that – well, lets talk about something. When your brother first found out that he had a warrant for his arrest, what did he do?
>
> A: We did not know that he had a warrant out for his arrest. We knew that he was being accused of something because a lady sent him a certified letter warning him that he was being accused of something.
>
> Q: Okay. Did he contact law enforcement and turn himself in to see whether or not there were any warrants?
>
> A: Law enforcement actually called him to tell him that he was no longer allowed at certain places, and he asked what it was about, and he was denied the ability to learn what it was about.
>
> Q: So did they ever tell him that he had an outstanding warrant?
>
> A: No.
>
> Q: You're aware that he was arrested by the United States Fugitive Task Force, correct?
>
> A: Yes, sir, I was, because I was there.

Based on the arrest warrant affidavits, the mother of one of the victims, J.C., contacted law enforcement on May 1, 2022 and reported that J.C. (the victim in the continuous sexual abuse case) and his friend, D.R., (the victim in the indecency case) made outcry statements regarding sexual assaults perpetrated against them by Appellant. On May 5, the victims were interviewed at the Children's Advocacy Center in Smith County, and made outcry statements of abuse perpetrated against them by Appellant. On that same day, a Smith County Sheriff's detective formally interviewed J.C.'s mother. On May 9, a sexual assault nurse examiner examined both

victims. On May 17, the investigating detective presented the warrants to the trial court and Appellant was arrested that day. Thus, based on the record, any inference that Appellant was attempting to avoid arrest on the warrants would be purely speculative.

In *Ex parte Smith*, No. 09-06-00104-CR, 2006 WL 1511480 (Tex. App.—Beaumont May 31, 2006, no pet.) (mem. op., not designated for publication), the defendant was charged with aggravated sexual assault of a child and indecency with a child. 2006 WL 1511480, at *1. The evidence showed that defendant had a good work record, no prior criminal history, and significant ties to the prosecuting county. *Id.* at *2. The magistrate set bail at $250,000 in the aggravated assault case and $200,000 in the indecency case. *Id.* at *1. After a hearing on the defendant's request for a bail reduction, the trial court set bail at $125,000 in the aggravated sexual assault case and $75,000 in the indecency with a child case. *Id.* The court of appeals held these amounts to be excessive and set bail at $50,000 and $25,000. *Id.* at *7.

In *Ex parte Bennett*, No. 02-07-00175-CR, 2007 WL 3037908, at *4 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication), the defendant was charged with multiple counts of aggravated sexual assault of a child. 2007 WL 3037908, at *4. In upholding total bail of $600,000, the court noted the serious nature of the offenses and defendant's failure to maintain contact with his attorney when the bonds were originally set at a lower amount. *Id.* In this case, there is no evidence Appellant failed to maintain contact with his attorney. Also, unlike Bennett who was not currently employed and only had minimal ties to the prosecuting county, Appellant had employment prior to being arrested, although it was short term, and resided in Smith County for most of his entire life. The State offered no evidence or testimony to contradict Carsten's testimony.

In *Ex parte Bratcher*, Nos. 05-05-00634-CR, 05-05-00635-CR, 2005 WL 1634971, at *5 (Tex. App.—Dallas July 13, 2005, no pet.) (mem. op., not designated for publication), the defendant was charged with two aggravated sexual assault of a child offenses with total bonds of $1,000,000. 2005 WL 1634971, at *5. In upholding the trial court's denial of bond reduction, the court noted the defendant had previously been tried and convicted of sexual assault of the same victim and had three prior convictions for sexual assaults against children. *Id.* The victims in those cases were students at a daycare that the defendant co-owned with his mother who still operated the facility and with whom defendant was going to stay while on bond. *Id.* Further, the work the defendant would be doing while on bond involved traveling, which would make him a

higher flight risk. *Id.* These facts led the court to find the trial court struck the balance between the presumption of innocence and the State's interest in assuring the defendant's presence at trial. *Id.* In the present case, Appellant does have a criminal history. Carsten testified that he been revoked from a prior probation. However, there is no suggestion in the record that he has a has history of sexual assault or other violence against children. While the State expressed concern that Appellant would reside near his alleged victim, there was testimony that Appellant would agree to GPS monitoring and there is no direct evidence that Appellant would attempt to contact the victims if released on bond.[3] The only evidence offered regarding Appellant's criminal history was a TCIC/NCIC print-off which reflected four previous arrests: two arrests in 2000 for misdemeanor theft and unauthorized use of a motor vehicle (UUMV), an arrest in 2005 for evading arrest in a vehicle, and an arrest in 2006 for possession of a prohibited weapon. It appears from the print-off that Appellant was acquitted of the theft charge in 2000 but there is no disposition history for the UUMV charge. It also appears Appellant was convicted of the prohibited weapons charge, and there is an entry indicating Appellant served approximately six months in State jail in late 2006 and early 2007, although it is unclear for what charge.

In *Ex parte Ramirez-Hernandez*, the defendant was charged with three counts of aggravated sexual assault of a child against one victim, his stepdaughter. 642 S.W.3d at 912. The bonds were set at $500,000 for one count and $250,000 on the other two counts, for a combined $1,000,000 bond. *Id.* In that case, the state offered no evidence that the appellant had any criminal history, and the appellant offered testimony that he was employed for the past ten years and could return to his job if released on bond. *Id.* at 919. Despite not being a citizen of the United States and having no legal status in the United States, the appellant resided in the prosecuting county for the previous fourteen years. *Id.* The court of appeals determined that the circumstances of the offense, possible sentence and concerns that the appellant posed a flight risk favored a higher bond, but when balanced, did not warrant a combined $1,000,000 bond amount. *Id.* at 925.

Here, the State cites two cases which it argues support the bond in this case: *Ex parte Bordelon*, No. 04-20-00364-CR, 2021 WL 1988259 (Tex. App.—San Antonio May 19, 2021,

---

[3] The arrest warrant affidavits state that Appellant had access to the victims in each case through his friendship with one of the victim's mothers, who reported the offenses to the affiant. There is no indication that Appellant has any relationship by blood or marriage to the victims beyond his friendship with one of the victim's mothers.

10

pet. ref'd) (mem. op., not designated for publication) and *Ex parte Greenwood*, No. 09-17-00257-CR, 2017 WL 5179962 (Tex. App.—Beaumont Nov. 8, 2017, no pet.) (mem. op., not designated for publication). The State argues that

> While neither *Bordelon* nor *Greenwood* mirror the instant cases exactly, they each place significant weight upon the serious nature of the sexual offenses against children, the substantial length of the applicable punishment range, the safety of the victims and the community, and the potential risk of flight. All of which are similarly significant factors here along with Appellant's criminal history.

In *Bordelon*, the appellant was awaiting trial on five felony offenses: one count of continuous sexual abuse of a child; one count of aggravated sexual assault of a child; and three counts of aggravated assault with a deadly weapon. 2021 WL 1988259, at *1. The facts in *Bordelon* are extraordinary: the appellant was first indicted for continuous sexual abuse of a child, D.B., on March 6, 2014, and while on trial for the offense, a second child, M.R., made an outcry of sexual assault against Bordelon during the trial, which resulted in a mistrial. *Id.* On November 15, 2015, Bordelon was re-indicted for continuous sexual abuse of D.B. and additionally indicted for aggravated sexual assault of M.R., along with three counts of aggravated assault with a deadly weapon for pointing a shotgun at D.B., his wife Priscilla, and D.B.'s uncle Carl Riley. *Id.* at *1, *4. The total bonds were set at $1,000,000. *Id.* at *1. The appellant filed a pretrial writ of habeas corpus seeking a bond reduction, which the trial court denied. *Id.* at *1. At the hearing, the State offered into evidence the probable cause affidavits supporting the arrest warrants. *Id.* at *3. The documentary evidence submitted into the record at the hearing revealed that the appellant began touching his daughter's vagina when she was seven years old, penetrated her with his fingers and penis, and told her not to tell her mother, Priscilla. *Id.* at *4. With respect to the aggravated assault charges, the affidavit shows that after D.B. told Priscilla about the sexual abuse, the appellant expressed a desire to end his life and pointed a gun at D.B., Priscilla, and Carl before fleeing in his truck. *Id.* The evidence also showed that M.R. was preparing to testify for the defense when she outcried to the appellant's trial counsel that the appellant also sexually abused her by penetrating her with his finger when she was six or seven years old. *Id.* Finally, one report entered into evidence at the hearing reflected the existence of a potential third victim alleging sexual abuse at the appellant's hands, which was under investigation by law enforcement. *Id.* Ultimately, the appellate court held that the appellant

failed to meet his burden that, under the relevant factors, the trial court abused its discretion considering the nature of the charges, the potential punishments, and the safety of the victim. *Id.* at \*8.

We disagree with the State's contention that **Bordelon** supports a conclusion that bail in this case is not excessive. As evidenced by the above discussion, the facts of **Bordelon** are extraordinary in that during the course of the original trial, another victim made an outcry, and a third victim outcried during the investigation into the second victim's allegations. *Id.* at \*1, \*4. Moreover, the appellant in **Bordelon** threatened his daughter, D.B., the victim in the continuous sexual abuse case, his wife, and D.B.'s uncle with a shotgun after D.B. outcried. *Id.* Finally, the appellant faced a continuous sexual abuse charge, an aggravated sexual assault of a child charge, and three aggravated assault with a deadly weapon charges. *Id.*

**Greenwood** is similarly distinguishable. *See* 2017 WL 5179962, at \*4. On September 21, 2016, the appellant was indicted for continuous sexual abuse of a child, alleging that he perpetrated continuous sexual abuse of a child on or about September 1, 2007 through June 14, 2011. *Id.* at 1. The indictment further alleged that the appellant had previously been convicted of murder. *Id.* The appellant bonded out on the charge and was subsequently indicted on June 7, 2017 for indecency with a child, which allegedly occurred on February 7, 2017, during the time the appellant was out on bond for the continuous sexual abuse of a child charge. *Id.* The trial court set bail in the indecency case at $2,500,000. *Id.* The appellant filed an application for writ of habeas corpus seeking a bond reduction, which the trial court granted, reducing the bond to $1,000,000. *Id.* The trial court took judicial notice of both charges and stated on the record that it considered the factors set forth in Article 17.15, the nature of the offense and circumstances of both the continuous sexual abuse case and the indecency with a child case, and the safety of the victims and the community. *Id.*; TEX. CODE CRIM. PROC. art. 17.15. On appeal, the court noted that the appellant had previously been convicted of two counts of murder by strangling two females. *Greenwood*, 2017 WL 5179962, at \*4. The court ultimately held that the appellant did not meet his burden to show that the bond was excessive in light of the evidence that the appellant had previously been convicted of murdering two women and committed the offense of indecency with a child while on bond for the offense of continuous sexual abuse of a child. *Id.*

The State argues that the severity and nature of the charges create a risk to the community and the victims and Appellant's access to an RV and $13,000 cash make him a flight risk. We

agree that the nature and severity of the charges favor a high bond, especially with respect to the continuous sexual assault of a child charge, given the punishment range for the offense. The allegations contained in the arrest warrant affidavit are very serious, and as the State notes, the Appellant faces the possibility of spending the rest of his life in prison.

However, we cannot agree with the State that Appellant presents a flight risk based on the evidence in the record. The State offered no evidence that Appellant plans to flee if released on bond. *Compare **Clemons***, 220 S.W.3d at 179 (defendant attempted to persuade wife to flee to Mexico with him and told several persons he would kill himself rather than go to prison). And, as previously discussed, there is no evidence that Appellant attempted to avoid being arrested on the warrants. The only evidence in the record regarding Appellant's intentions if released on bond is Carsten's testimony that Appellant plans to seek re-employment, return to her home, and consent to GPS monitoring if released on bond. Moreover, Appellant was born in and has lived in Smith County for most of his life. While Appellant has been revoked from a prior probation, the record is silent as to the circumstances of that violation. There are myriad reasons why a probationer can be revoked from probation; thus, this evidence does not support the inference that Appellant would fail to appear for his trial. And although Appellant spent some months in a state jail facility, the record does not demonstrate the offense for which he was jailed.[4]

While we agree there are factors in this case, namely the severity of the offenses, the potential punishments, and the fact that Appellant is accused of sexually abusing two victims that support a higher bail amount, we cannot agree that the evidence supports a total bail amount of $1,500,000. We acknowledge that the appellant has a criminal history which includes a charge for evading arrest which is concerning, despite the age of the arrest. However, except for ***Bordelon, Bratcher,*** and ***Greenwood***, in which there were extreme aggravating circumstances that are not present in this case, we are unaware of any cases supporting a bond in excess of $1,000,000 based upon the evidence adduced at the pretrial hearing and the relevant considerations. *See, e.g., **Ramirez-Hernandez,*** 642 S.W.3d at 925 ($1,000,000 bond excessive for three counts of aggravated sexual assault of child despite fact that appellant was Mexican citizen without a legal status in United States); ***Ex parte Williams***, No. 12-21-00032-CR, 2021 WL 2816404, at *4 (Tex. App.—Tyler June 30, 2021, no pet.) (mem. op., not designated for

---

[4] The TCIC/NCIC print-off shows that Appellant served a state jail sentence of approximately six months beginning in late 2006, however the entry does not state what offense the Appellant was convicted of and the print-off does not state the disposition of the evading arrest charge for which he was arrested in 2005.

publication) (reversing total bail of $600,000 for eight counts of indecency with a child and sexual assault of a child when no proof appellant was flight risk); *Ex parte Turner*, No. 12-20-00230-CR, 2021 WL 1916832, at *1 (Tex. App.—Tyler May 12, 2021, no pet.) (mem. op., not designated for publication) (reversing total bail of $500,000 for third degree felony of unlawful restraint involving young children); *Ex parte Rean*, No. 03-09-00032-CR, 2009 WL 2902707, at *8 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op., not designated for publication) (affirming bail of $250,000 in sexual assault case). As previously discussed, bonds in excess of seven figures are almost never required, even in capital cases. *See Flores*, 2021 WL 3922919, at *4.

Accordingly, after reviewing the record in this case and considering the factors in Article 17.15, we conclude the trial court abused its discretion in denying Appellant's request for pre-trial reduction of bond and hold the amount of Appellant's bail is unsupported by the evidence and therefore excessive. We sustain Appellant's sole issue.

## DISPOSITION

Having sustained Appellant's sole issue, we *reverse* and *remand* this case to the trial court for further proceedings consistent with this opinion.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 31, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2022**

**NO. 12-22-00209-CR**

**EX PARTE: LANCE CHARLES CONKLIN**

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 22-1306-C)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2022**

**NO. 12-22-00210-CR**

**EX PARTE: LANCE CHARLES CONKLIN**

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 22-1307-C)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*