# NO. 12-23-00308-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EX PARTE:* | *§* | *APPEAL FROM THE 217TH* |
| *OMARION LEWIS,* | *§* | *JUDICIAL DISTRICT COURT* |
| *APPELLANT* | *§* | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Omarion Lewis appeals the trial court's denial of his pretrial application for writ of habeas corpus, by which he sought a bond reduction. In one issue, Appellant argues that the trial court abused its discretion by declining to reduce the amount of his $500,000 bail bond, which he contends is excessive. We reverse and remand.

### BACKGROUND

Appellant was arrested for his alleged involvement in an aggravated assault with a deadly weapon, which occurred on March 12, 2023.[1] Three co-defendants also were arrested for aggravated assault with a deadly weapon stemming from the same underlying event. Appellant, who was a seventeen-year-old, high school student at the time, surrendered to authorities a few days later.

---

[1] *See Ex parte Lewis*, No. 12-23-00159-CR, 2023 WL 6157405, at *1 (Tex. App.–Tyler Sept. 20, 2023, no pet.) (mem. op., not designated for publication). As set forth in greater detail herein, this is the second appeal of an application for writ of habeas corpus arising from the underlying proceedings.

Appellant was charged by indictment with aggravated assault, and his bond was set at $500,000. Thereafter, he filed an application for writ of habeas corpus, by which he sought to have his bond reduced. The trial court denied Appellant's application, and he appealed to this court. Based on our review of the record and our consideration of the relevant authorities, we concluded that the trial court abused its discretion by denying Appellant's request for bail reduction and held that the amount of Appellant's bail was unsupported by the evidence and, therefore, excessive. *See Ex parte Lewis*, No. 12-23-00159-CR, 2023 WL 6157405, at *4 (Tex. App.–Tyler Sept. 20, 2023, no pet.) (mem. op., not designated for publication). Accordingly, we reversed the trial court's order on Appellant's application and remanded the cause to the trial court for further proceedings consistent with that opinion.[2] *See id.*

Thereafter, the State sought to charge Appellant, who still was under arrest, with murder arising from the same facts from which the aggravated-assault charges against him arose. The trial court set his bond on the pending murder charge at $500,000, and Appellant again filed an application for writ of habeas corpus, by which he sought to have his bond reduced. After a hearing, the trial court denied Appellant's application, and this appeal followed.

## BOND AMOUNT

In his sole issue, Appellant argues that the trial court abused its discretion by declining to reduce the amount of his bail bond.

### Standard of Review and Governing Law

Because the decision regarding a proper bail amount lies within the sound discretion of the trial court, we review the trial court's denial of a request to reduce bail for an abuse of discretion. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2022); *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.–Eastland 2007, no pet.). In determining whether the trial court abused its discretion, we do not substitute our judgment for that of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). We must determine whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* at 380. A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.* at 391 (op.

---

[2] The record reflects that, on remand, the trial court reduced Appellant's bond on the aggravated assault charges to $70,000.

on reh'g).  The petitioner bears the burden of showing that the bail set is excessive.  ***Rubac***, 611 S.W.2d at 849.

The purpose of setting a pretrial bond is to secure an appellant's presence at trial.  *See **Ex parte Rodriguez***, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); ***Ex parte Rincon***, Nos. 04-13-00715-CR–04-13-00718-CR, 2014 WL 2443870, at *1 (Tex. App.–San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication).  The amount of bond necessary to achieve this purpose is committed to the trial court's sound discretion; however, the trial court's discretion is bounded and guided by constitutional and statutory provisions.  *See **Ex parte Estrada***, 398 S.W.3d 723, 724 (Tex. App.–San Antonio 2008, no pet.).  The federal constitution, our state constitution, and our state laws prohibit "excessive" bail.  U.S. CONST. AMEND. VIII, TEX. CONST. art. I, § 13; TEX. CODE CRIM. PROC. ANN. art. 1.09 (West 2005).

"[B]ail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with[;]" however, "[t]he power to require bail is not to be so used as to make it an instrument of oppression."  TEX. CODE CRIM. PROC. ANN. art. 17.15(1), (2).  Although a defendant's ability to make bail must be considered, it is not controlling.  *See id.* art. 17.15(4); ***Rodriguez***, 595 S.W.2d at 550.  The primary considerations when assessing the reasonableness of bail are the punishments that can be imposed and the nature of the offense. ***Ex parte Ramirez-Hernandez***, 642 S.W.3d 907, 917 (Tex. App.–San Antonio 2022, no pet.); ***Ex parte Melartin***, 464 S.W.3d 789, 792 (Tex. App.–Houston [14th Dist.] 2015, no pet.).  The trial court also must consider the safety of law enforcement and the community.[3]  TEX. CODE CRIM. PROC. ANN. art. 17.15(5).  Additional factors to be weighed in determining the amount of bond include (1) the accused's work record, (2) the accused's family and community ties, (3) the accused's length of residency, (4) the accused's prior criminal record, (5) the accused's conformity with previous bond conditions, (6) the existence of other outstanding bonds, if any, and (7) aggravating circumstances allegedly involved in the charged offense.  *See **Rubac***, 611 S.W.2d at 849–50.

**The Evidence**

In the instant case, Appellant remained detained pending a murder charge based on the same underlying facts upon which his aggravated-assault charge arose.  The general nature of the soon-to-be-charged offense and the potential punishment weigh in favor of a high bail amount.  If he were to be convicted of the first-degree felony offense of murder, Appellant faces a punishment

---

[3] The safety of the victim also is a factor; however, in this case, the victim is deceased.

3

range of five to ninety-nine years, or life. *See* TEX. PENAL CODE ANN. § 12.32(a) (West 2019). The consideration of the safety of the community also supports a high bail amount. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(a)(5).

At the bond-reduction hearing, Appellant's mother, Betty Shankle, testified that if the amount of Appellant's bail was lowered and he was released on bond, he could live with her. She further testified that she recently moved back to Texas from Wisconsin where she worked for a sheriff's department as a correctional officer. She stated that she leased an apartment in Jasper, Texas, was paying rent, and, although she currently is unemployed, she applied for a position at the Texas Department of Criminal Justice where she expected to be hired soon based on her previous employment there. Betty related that Appellant never before had been arrested or charged with a crime and that she and her husband previously paid $3,000 on his bond for aggravated assault, which exhausted their finances. She testified that Appellant has no funds saved, nor does he own property or a car. She also testified that she owns no houses or real property and, while she does own a vehicle, another of her children currently is in possession of it. Betty stated that if Appellant receives a bond reduction which they can afford, she will watch over him, help him get his G.E.D., and make sure he follows the conditions of his bond.

Appellant's step-father, LaThomas Shankle, also testified at the hearing. He stated that he has known Appellant for nearly all of Appellant's life and that Appellant had no prior, criminal history. LaThomas stated that he lives in Shawano, Wisconsin and works as a technician at Arrocast, which makes parts for John Deere, but also works part-time at the Shawano County Jail as a jailer. He further stated that he makes twenty dollars per hour working forty-eight hours per week at Arrocast and makes $19.50 per hour working twenty-four hours every two weeks as a jailer. He also related that he neither owns a home nor any vehicles. LaThomas testified that he and Betty are unable to post a $500,000 bond for Appellant and it is unlikely they could afford to post a bond as low as $50,000. He recalled that Appellant turned himself in when he found out there was a warrant for his arrest and elaborated that when they were told about Appellant's warrant, they contacted Appellant and told him to go to his sister's house until Betty could arrive in Texas to accompany Appellant as he surrendered to law enforcement.

Additionally, Betty's testimony suggests that Appellant's prospects for employment may be limited by his young age and lack of a high school diploma. No evidence was adduced which suggests that Appellant might flee or attempt to avoid prosecution if released on bond.

4

**Discussion**

Our review of the evidence indicates that the bond is substantially higher than Appellant realistically can afford to pay. *See **Ramirez-Hernandez***, 642 S.W.3d at 920. Betty testified that she and her husband previously paid $3,000 on Appellant's bond for aggravated assault, which exhausted their finances. LaThomas testified that they could not afford to pay Appellant's $500,000 bond, and he was skeptical as to whether they could afford to pay a $50,000 bond at this point. A defendant's inability to make bail does not automatically render the amount excessive. ***Ex parte Mazuera***, No. 01-21-00612-CR, 2022 WL 1110989, at *9 (Tex. App.–Houston [1st Dist.] Apr. 14, 2022, no pet.) (mem. op., not designated for publication); *see also **Ex parte Vance***, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980). If a defendant's ability to make bail controlled, the trial court's role in setting the amount of bail would be eliminated, and the defendant would be in the position to determine the amount of bail, which is antithetical to the purpose of a bond. *See **Milner v. State***, 263 S.W.3d 146, 150 (Tex. App.–Houston [1st Dist.] 2006, no pet.).

The record reflects that Appellant was eighteen years old at the time of the bond hearing, is unemployed, lacks a high school diploma, and must rely upon Betty and LaThomas to pay any bail bond. Although Appellant's inability to make bail or post a bond since his arrest is not dispositive, it is a factor we consider. *See **Rodriguez***, 595 S.W.2d at 550; ***Mazuera***, 2022 WL 1110989, at *9; *see also **Rincon***, 2014 WL 2443870, at *3. When bail is so high that the defendant realistically cannot pay for it, the trial court essentially displaces the presumption of innocence. *See **Mazuera***, 2022 WL 1110989, at *10. Bail cannot be used as an instrument of oppression. ***Id.***; *see also **Ex parte Durst***, 148 S.W.3d 496, 499 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (holding that when bail amount was set solely to prevent defendant from being released from jail, it was being used as an instrument of oppression). LaThomas testified at the hearing that it was unlikely he and Betty could afford to pay a $50,000 bond, and Betty testified that they exhausted their finances paying $3,000 toward Appellant's previous bond. Yet the trial court set bond at an amount ten times the amount the record suggests Appellant would be unlikely to afford, which constitutes a de facto setting of no bond. *See **DePena v. State***, 56 S.W.3d 926, 929 (Tex. App.–Corpus Christi 2001, no pet.) (holding that setting bail at four times what appellant could reasonably pay was a de facto setting of no bond).

Case law is of somewhat limited value in addressing the issue of the appropriate amount of bail "because appellate decisions on bail matters are often brief and avoid extended discussions,

and because the 'cases are so individualized that generalization from results reached in others is difficult.'" ***Ex parte Beard***, 92 S.W.3d 566, 571 (Tex. App.–Austin 2002, pet. ref'd) (quoting 41 George E. Dix and Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 16.51 (2d ed. 2001)).  However, combined with the factors discussed above, a comparison of the bail amount in this case to the bail amounts in cases decided by other intermediate appellate courts is instructive and leads us to conclude that Appellant's bail of $500,000 is excessively high.  *See **Ex parte McFarland***, No. 04-03-00154-CR, 2003 WL 21658599, at *3 (Tex. App.–San Antonio Jul. 16, 2003, no pet.) (mem. op., not designated for publication) (reducing $500,000 bail on murder charge to $250,000 even though appellant impeded investigation and evidence of flight risk because of appellant's strong ties to the community and his children); ***Ex parte Eggleston***, 917 S.W.2d 100, 101 (Tex. App.–San Antonio 1996, no pet.) (court reversed and bail reduced from $1,000,000 to $300,000 in murder case where defendant allegedly killed his nine-year-old son, hid body, and reported child kidnapped; defendant had lived all over world, had only lived in court's jurisdiction for one year, and had contacts in many other states); *see also **Ex parte Taylor***, No. 02-20-00010-CR, 2020 WL 1963788, at *8–9 (Tex. App.–Fort Worth Apr. 23, 2020, no pet.) (mem. op., not designated for publication) (reversing bail amount of $500,000 on first-degree felony charge of aggravated robbery).  Indeed, there are a number of cases of pretrial bail in murder cases set at or below $100,000.  *See, e.g.*, ***Ludwig v. State***, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (bail in capital murder case reduced from $2,000,000 to $50,000); ***Ex parte Milburn***, 8 S.W.3d 422, 427 (Tex. App.–Amarillo 1999, no pet.) (pretrial bail reduced in capital murder of a child from $2,000,000 to $100,000); ***Ex parte McDonald***, 852 S.W.2d 730, 734–35 (Tex. App.–San Antonio 1993, no pet.) (bail reduced from $1,000,000 to $75,000 in capital-murder case where defendant allegedly kidnapped and stabbed his wife but voluntarily surrendered, and could not afford bond); *but see **Milner***, 263 S.W.3d at 151 (affirming trial court's refusal to reduce $500,000 bail bond in murder and attempted murder case where appellant had extensive criminal history, lack of evidence of his connections to Brazoria county, potential as flight risk, safety of victim, his children, and community, and violent nature of alleged crimes).

The limited record before us does not reveal the circumstances surrounding the alleged offense or the particular roles Appellant and the three co-defendants are accused of playing in that offense.  Nonetheless, we note that the potential punishment Appellant faces and the safety of the community support a somewhat high bail amount; however, the $500,000 bail set by the trial court

6

is well beyond what Appellant can afford to pay. Appellant is eighteen years old, lacks money, and is unemployed, and LaThomas and Betty cannot afford to pay the bond on bail in the amount of $500,000. Appellant voluntarily surrendered and has no previous criminal history. Moreover, no evidence was adduced at the hearing indicating that he is a flight risk. Betty, an experienced correctional officer, testified that Appellant would live with her if released and she would ensure his compliance with any bond conditions.

Based on our review of the record and our consideration of the factors set forth in Article 17.15 and *Rubac*, we conclude the amount of Appellant's bail is unsupported by the evidence and, therefore, is excessive. Accordingly, we hold that the trial court abused its discretion by denying Appellant's application for writ of habeas corpus requesting a bail reduction. Appellant's sole issue is sustained.

## DISPOSITION

Having sustained Appellant's sole issue, we *reverse* the trial court's order denying Appellant's application for writ of habeas corpus and *remand* the cause to the trial court for further proceedings consistent with this opinion.

**BRIAN HOYLE**
Justice

Opinion delivered June 21, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 21, 2024**

**NO. 12-23-00308-CR**

**EX PARTE: OMARION LEWIS,**
Appellant

Appeal from the 217th District Court
of Angelina County, Texas (Tr.Ct.No. W-044-23)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED, and DECREED by this court that the trial court's order denying Appellant's application for writ of habeas corpus be **reversed** and the cause **remanded** to the trial court **for further proceedings**; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*